(No. 13977.—Decree affirmed.)

THE UNION COLLIERY COMPANY, Appellant, *vs.* DERILDA FISHBACK, Appellee.

*Opinion filed October 22, 1921.*

1. SPECIFIC PERFORMANCE—*finding of master, approved by chancellor, is as binding as a verdict.* The credibility of witnesses is a question for the master and the court to consider, and the master's findings, when approved by the court, have the same binding force upon the Supreme Court as the verdict of a jury in law cases and will not be disturbed unless against the weight of the evidence.

2. SAME—*when evidence to defeat mining lease does not impeach acknowledgment.* In a suit for the specific performance of a mining lease, evidence that the lessor signed and acknowledged the lease under a misapprehension as to its contents does not impeach the certificate of acknowledgment, which relates only to her signature and not to her understanding of the lease.

3. SAME—*when a notary may testify to mistake in body of instrument.* In a suit for specific performance of a mining lease containing an option clause, the notary who took the lessor's acknowledgment of her signature may testify that the lessor refused to sign the lease until he agreed to strike out the option clause of the lease, and that he thought he had done so and so assured her before she signed.

4. SAME—*specific performance will not be allowed if contract is entered into through misrepresentation.* An application for specific performance is addressed to the sound legal discretion of the court, to be governed by the merits as disclosed by the facts, and performance will not be decreed unless the agreement has been entered into with perfect fairness and without misapprehension or misrepresentation.

APPEAL from the Circuit Court of Jackson county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

GEORGE W. DOWELL, W. F. ELLIS, JOHN M. GOODWIN, and KRAMER, KRAMER & CAMPBELL, for appellant.

M. C. COOK, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The Union Colliery Company, appellant, filed its bill in the circuit court of Jackson county against Derilda Fishback, appellee, praying for the specific performance of a certain option contract for the purchase and sale of all coal in or under the southwest quarter of the northwest quarter of section 4, township 7, south, range 1, west of the third principal meridian, situated in Jackson county, State of Illinois, alleged to have been given in a certain mining lease and option signed by appellee April 19, 1917. Appellee answered the bill, and the issues thus formed were referred to the master in chancery for proofs and findings. The master took the proofs and made his findings against appellant, recommending a decree in favor of appellee. Objections were filed to the master's report and were overruled. Appellant filed exceptions to the master's ruling, and on final hearing the court overruled the exceptions and entered a decree dismissing the bill for want of equity and adjudging costs against the appellant. Appellant has perfected its appeal to this court.

In the mining lease and option contract George W. Dowell is named as the lessee and Derilda Fishback as the lessor, and it purports to have been signed and sealed in duplicate by both the lessor and the lessee on the date aforesaid. As a matter of fact only one copy of the instrument was signed and sealed, and it was only signed and sealed by Derilda Fishback and was acknowledged by her before L. P. Harriss, a notary public. A purported unsigned duplicate of this lease and option was left with appellee by Harriss, the notary public, at the time she signed and acknowledged the

lease and option contract, which latter instrument was taken by Harriss and delivered thereafter to the lessee. The lease and option signed and acknowledged by appellee is in all respects identical with the duplicate or copy left with her, except that her duplicate copy was not signed or acknowledged and material parts of the option contract in her copy were stricken out. The instrument delivered to Dowell by the notary recited a consideration of one dollar, in consideration of which the lessor demised, leased and to mine let unto Dowell, his successors and assigns, all the coal in or under said tract that can be economically mined or taken out of said premises, with the right to enter upon said land and to take, mine and remove the coal in any manner that the lessee desired. The lessee and his successors and assigns covenanted and agreed to pay to the lessor the sum of three cents per ton for every ton of 2000 pounds of good, clear, merchantable mine-run coal taken therefrom, which was to be due and payable on certain dates therein specified. The other covenants and agreements of the lease are not material to this inquiry, except the option contract, which is in these words, to-wit: "It is also agreed that the party of the second part is hereby given an option or right to buy the above mineral at any time within a period of six months from this date at a purchase price of forty dollars ($40) per acre, and should he fail to exercise the right of purchase as herein specified, then this clause of this lease shall become null and void unless a further time is specified by the party of the first part." In the purported copy left with appellee by Harriss the following words and figures are stricken out of the option agreement: "at a purchase price of forty dollars ($40) per acre." After the delivery to Dowell of the mining lease and option executed by appellee, he on June 9, 1917, duly transferred, sold, conveyed and assigned the same to Eugene McAuliffe, trustee, his executors, administrators and assigns. On July 31, 1917, McAuliffe, for a consideration named, sold, assigned

and transferred the lease and option contract to the Union Colliery Company, appellant. It appears from the evidence that Dowell, Harriss, the notary public who took appellee's acknowledgment, and one LaFonte, were partners in a deal with McAuliffe in the securing of the lease and option contract from appellee and leases from other land owners and coal owners in her vicinity, and that they were agents for McAuliffe and appellant in securing such coal leases, which were to be taken in the name of Dowell, to be later assigned to McAuliffe.

This suit is defended upon the ground that the contract upon which the suit is brought is not the real agreed contract between the parties to the lease and option contract, but that the real contract appellee supposed she was signing, and was told by Harriss that she was signing, was the same contract as the copy left by Harriss with her, as above described. The master in his findings found that the evidence supported the contention of the defendant, and that the real contract which she thought she was signing, and was led to believe by Harriss that she had signed, was for royalty, only, without option to the lessee to purchase on the terms set forth in the option agreement, and that the equities of the cause were with her, and that she ought not to be compelled to specifically perform the option agreement. The master refers to the fact that appellee's contention was supported by her testimony, corroborated by her daughter, Mrs. House, and also by Harriss, the notary public who took the acknowledgment.

We have made a careful examination of the evidence in the record, and it appears that the master's findings, approved by the court on the hearing, are supported by the evidence. The positive testimony of the three witnesses above mentioned, including Harriss, is, in substance, that Harriss made three separate trips to the home of appellee before he secured the signing by her of the lease and option delivered to Dowell. On the first trip by Harriss she de-

clined making any contract whatever, giving as a reason therefor that she had made contracts with others which were not carried out. On the second and third trips by Harriss she made distinct statements to him each time that she would not sign an option contract for the sale of her coal but would only sign a lease for a specified royalty per ton. On the final day, when she signed the lease and option contract, she still persisted that she would not sign it unless he struck out the option agreement. Harriss then agreed to strike out the option contract, and he positively testified, in substance, that he so agreed and that the option contract ought to have been stricken out by him and that he thought he had done so. Mrs. House corroborates appellee by testifying positively that Harriss agreed to strike out the option contract, and that appellee stated positively to him that she would not sign it unless the option contract was stricken out. In other words, the facts proved before the master are, in substance, that appellee, without reading, signed the lease and option that was delivered to Dowell with the understanding and representation that the option part of the agreement was stricken from her copy and also from the contract that was delivered to Dowell. The evidence further discloses that the contract signed by her was not read to her at the time, and that she did not read the same herself to see if the option was stricken. On the part of appellant it is clearly proved that the instrument delivered to Dowell and by him assigned to McAuliffe and by McAuliffe assigned to appellant was in the same condition at the time it was signed by appellee as it now appears in the record and that no alteration or change has been made therein since she signed it. There is also the testimony of McAuliffe in the record in substance and to the effect that Harriss, who took the lease from appellee, told him (McAuliffe) on different occasions before the trial that the instrument delivered to appellant was in the same condition as when appellee signed it, and that she signed the lease as her contract and

that it was her contract understandingly made by her. The testimony of McAuliffe in that regard is denied by Harriss.

It is argued by appellant that the lease was changed by appellee, or by someone for her, after she found out that appellant was going to locate its mine shaft near her land and that mining on her land would necessarily be begun very shortly after the mine began operations. This contention is not based upon any evidence whatever except the bare fact that the mine shaft was to be located near her land and that she had ascertained that fact before demand was made upon her for a deed, and upon the further fact that the words aforesaid were stricken out of the copy of the contract left with her.

We have considered the point made by appellant that all the option contract was not stricken out of the copy of the contract left with appellee, and her explanation that in the contract she was only leasing for a royalty for six months. The evidence on this question is not very satisfactory. We think that the testimony in the record fully supports the findings of the master and of the court, and that we would not be warranted in reversing the decree of the court on the ground that the evidence does not support it. It is the established rule of this court that a master's findings, approved by the chancellor, will not be disturbed by this court unless manifestly and clearly against the weight of the evidence. *Siegel* v. *Andrews & Co.* 181 Ill. 350.

It is contended by appellant that the proof in this case is not sufficient to impeach and overcome the certificate of acknowledgment of the notary. It is true that the proof to sustain the charge that a certificate of acknowledgment is untrue and fraudulent must be of the clearest, strongest and most convincing character. In this case the defense was, not that appellee did not sign and acknowledge the instrument in question, but that she signed and acknowledged the same under a misapprehension as to its contents,—that is, that the option clause had been stricken

therefrom. This does not necessarily impeach or contradict any part of the certificate of the notary public. For that reason we think that the cases cited by appellant upon this question are inapplicable. It is even claimed that under some authorities the testimony of Harriss, the notary, was not admissible because of the fact that the effect of his testimony was to impeach his own certificate of acknowledgment. For the reasons already explained we do not think this evidence had that effect. He certainly could testify as to any oversight or mistake on his part regarding the contents of the body of the agreement. This court has never held that the testimony of a notary is incompetent when it has the effect to impeach his certificate of acknowledgment. We do not think any acknowledging officer would be incompetent to testify, under any holding, as to a mistake in the body of the instrument, when such testimony has no tendency to impeach or contradict the express recitals of his certificate. We have held that his testimony impeaching his certificate has little weight. (*Wilson* v. *South Park Comrs.* 70 Ill. 46.) The credibility of Harriss, and also the credibility of all the other witnesses, was a question for the master and the court to consider and pass upon, and the findings of the master, when approved by the court, have the same binding force upon us as the verdict of a jury in law cases.

Courts of equity will not always enforce the specific performance of a contract. The application for such relief is at all times addressed to the sound legal discretion of the court, and the court should be governed in every case by the facts and the merits disclosed by the facts. Specific performance will not be decreed unless the agreement has been entered into with perfect fairness and without misapprehension or misrepresentation. (*Cowan* v. *Curran,* 216 Ill. 598; *Skeen* v. *Patterson,* 180 id. 289.) In this case the evidence supports the claim of appellee that she entered into this contract and signed the same through a misappre-

hension on her part as to the contents of the instrument she signed and through misrepresentation of the agent of appellant who took her acknowledgment to the same. The court was therefore warranted in refusing specific performance of the contract in question and in dismissing appellant's bill for want of equity.

The decree of the circuit court is affirmed.

*Decree affirmed.*