(No. 19203.

HENRY NOLL *et al.* Appellees, *vs.* ELMER PETERSON *et al.* Appellants.

*Opinion filed February 21, 1930—Rehearing denied April 2, 1930.*

NELS J. JOHNSON, and OKE L. PEARSON, (AMOS W. MARSTON, of counsel,) for appellants.

CHETLAIN, MEAGHER & CHETLAIN, for appellees.

Mr. COMMISSIONER EDMUNDS reported this opinion:

Appellees, Henry and Elizabeth Noll, filed in the superior court of Cook county a bill for rescission of a written contract which involved the exchange of certain apartment

properties in the city of Chicago, alleging misrepresentation of income through concealed concessions on leases. The cause was referred to a master, hearings were spread over a period of more than a year, and nearly two years elapsed before the report was filed. Based on the report, a decree awarding relief was entered against appellants, Elmer and Nancy Peterson and Gustav and Ellen Seegren, as well as other defendants whose connection with the case will subsequently appear but who did not join in the appeal.

Appellants have made and argued assignments of error touching many phases of the pleadings, proof and principles of law applicable thereto, a proper understanding of which makes it advisable to outline the course of the pleadings and evidence in more than ordinary detail.

In what will be designated throughout the opinion as the original amended bill, filed November 28, 1925, appellees (complainants below) allege, among other things, that on December 11, 1924, they were the owners of certain apartment property known as 1500-1502 Orleans street, also a second mortgage in the sum of $10,500 on certain Glenwood avenue property; that on said date appellants, (defendants below,) Elmer Peterson and Nancy Peterson and Gustav Seegren and Ellen Seegren, owned certain premises known as 7415-7423 Rogers avenue, which were improved with a sixteen-apartment building; that on said date R. V. Fonger, doing business as R. V. Fonger & Co., was engaged in the real estate business and was the authorized agent of appellants in the transaction hereinafter described; that appellants and Fonger combined and conspired to defraud appellees; that pursuant to said conspiracy Fonger solicited appellees to exchange their Orleans street property for appellants' Rogers avenue property and drew up a written agreement for such transfer, the terms and conditions of which appear from a copy attached to the bill and made a part thereof; that appellees signed the agreement on December 11, 1924; that pursuant to the agreement, and

relying upon the representations of appellants therein, appellees conveyed to appellants the Orleans street property, transferred to them the Glenwood avenue mortgage, paid them $9500 in cash, gave back a purchase money trust deed on the Rogers avenue property to Nels J. Johnson, trustee, in the sum of $9050, and performed everything required of them by the contract; that to defraud appellees appellants falsely represented in the written agreement that the rental from the Rogers avenue property was $1505 per month, whereas the actual rental was much less than said sum by reason of secret rent concessions granted by appellants; that appellants falsely represented that the Rogers avenue property was worth $125,000, whereas it was not then or thereafter worth any such sum; that appellees believed said representations and relied thereon; that to conceal the fraud until the deal was consummated, appellants deposited with Ferguson & Neumann, who were acting as rental collection agents of the Rogers avenue property, a sum of money in an amount equal to the secret concessions granted for a period of two months, with instructions to apply enough on each lease to make up the difference between the actual rent paid and the amount called for by the face of the lease; that Ferguson & Neumann did apply the money in this way, in consequence whereof appellees did not discover the fraud until long after the transaction was consummated; that appellees relied upon these misrepresentations; that they have paid off certain notes on the purchase money trust deed; that the Capital State Savings Bank is the holder of the balance of the notes; that they fear the bank may dispose of the notes or initiate foreclosure proceedings unless restrained by injunction; that appellees have paid all interest and part of the principal due on a first mortgage of $80,000 executed by appellants on the Rogers avenue property. Appellees pray an accounting, that the transaction be set aside, appellees re-conveying to appellants the Rogers avenue property and appellants

returning to appellees the Orleans street property, the Glenwood avenue mortgage, the $9500 cash, the purchase money trust deed, and all money on account of principal and interest paid by appellees on said mortgage, with interest on the same, or, in the event it is impossible to return any of said property, an equivalent in cash representing the value as of December 30, 1924. Appellees further pray that appellants be decreed to pay the value of all improvements made by appellees, as well as money paid on the $80,000 mortgage. As an alternative to the foregoing relief prayed, appellees pray that they be allowed to retain the Rogers avenue property and that appellants be decreed to pay them $35,950 in cash; that the purchase money mortgage on the Rogers avenue property be canceled and that appellants return all moneys paid on the purchase money mortgage, with interest thereon; that appellants pay the value of improvements and the amount paid on the $80,000 mortgage. Injunction is prayed to restrain the Capital City Bank from transferring the notes given under the purchase money trust deed, and to restrain Nels J. Johnson, trustee, from initiating foreclosure proceedings. By leave of court the bill was subsequently amended on its face to show a tender by appellees of the Rogers avenue property and a general offer to do equity.

Separate answers were filed by Fonger, the Capital State Savings Bank and Nels J. Johnson, respectively. Appellants filed a joint and several answer. After the case had been referred to the master appellants filed a cross-bill, to which they later attached a copy of the agreement of December 11, 1924, alleging substantially the matters contained in their joint and several answer, and also that appellees and Fonger had been guilty of conspiracy and fraud in making misrepresentations as to the Orleans street property.

During the progress of the hearing before the master, appellees by leave of court amended the above original amended bill by adding averments to the effect that appel-

lants had sold the Orleans street property to Louis Sterlek, and that the consideration derived therefrom was impressed with a trust in favor of appellees. The court ordered appellants to answer in ten days. Twenty-one days thereafter appellants filed a demurrer, alleging as special ground that appellees had an adequate remedy at law. This demurrer was stricken from the files.

The master's report and objections thereto were filed December 19, 1927. On January 27, 1928, leave was given appellees to amend the original amended bill of complaint to make additional parties defendant. On February 17, 1928, an amended bill was filed, which will be subsequently referred to as the final amended bill. It made Louis Sterlek and wife parties defendant. In form and substance it is in general like the original amended bill. However, there are certain changes. One new paragraph is added, alleging that the rent concessions did not appear in the leases or written agreement between appellees and appellants; that, with the exception of three, they were not disclosed to appellees before or at the closing of the deal, and that appellants then and there stated that there were no more. In a further paragraph, allegations are added to charge that appellants paid Ferguson & Neumann a sum sufficient to pay the full amount of the secret concessions throughout the entire period that they were to run and that Ferguson & Neumann did so apply them, the original amended bill having alleged the turning over to Ferguson & Neumann of only two months' concession money. In a further paragraph the matter relative to the conveyance to Louis Sterlek, previously introduced into the record by the amendment of May 4, 1926, above referred to, is amplified by the allegation that Sterlek and wife made the purchase of the Orleans street property for valuable consideration and without notice. The prayer differs from that of the original amended bill in that it omits the provision for conveyance back to appellants of the Rogers avenue property. How-

ever, there is inserted a tender back of said property and an offer to do equity. It also proposes that if the Orleans street property could not be returned, appellees should receive back the value of the equity of said property as fixed by the contract, the original amended bill having asked the return of equivalent value as of December 30, 1924. As an alternative to the return to appellees of the Glenwood avenue mortgage the payment of $10,500 and interest is asked.

To the final amended bill the Sterleks filed answer and appellants demurred. As special grounds of demurrer they set forth that complainants in said amended bill failed to admit conveyance to them of the property described in the bill of complaint and failed to show incumbrances and liens upon real estate alleged to be conveyed by them to defendants and failed to tender an accounting of profits; also that the bill was multifarious for exhibiting distinct matters and causes against different defendants. This demurrer was stricken from the files, with a rule to answer. Appellants filed an answer. The answer was stricken from the files and their original joint and several answer was ordered to stand to the final amended bill. Thereupon the chancellor overruled appellants' exceptions and entered an order approving the master's report.

Final decree was subsequently entered, rescinding the contract of December 11, 1924, ordering appellants to pay to appellees $15,950, (the value of the equity of the Orleans street property,) with interest at five per cent from December 30, 1924; also the sum of $9500, with interest, and the several amounts paid by complainants on the purchase money mortgage, with interest. The decree further ordered the return to appellees of the Glenwood avenue mortgage notes, or in lieu thereof their value in the sum of $10,500, with interest, the cancellation by the Capital State Savings Bank of the balance of the purchase money notes and their delivery to appellees, and the execution of a release of the

purchase money trust deed by Nels J. Johnson, trustee, and the delivery thereof to appellees. The decree also ordered that appellees re-convey the Rogers avenue property to appellants and deliver to them the release of the purchase money mortgage, that both sides file with the master the necessary data for accounting on both properties, and that the master state an account between them.

Appellants contend first, and at considerable length, that the court erred in permitting the several amendments above mentioned, in ruling upon appellants' pleadings in the manner indicated, and in entering a decree not in compliance with the pleadings and proof. The assignments of error involved in this contention can be considered with better understanding after disposition of others that strike more to the heart of the case.

Appellants contend that they were guilty of no fraud in the transaction. In support of this contention they argue as a question of law that representations relating to the value of and the income and profits from a new apartment building do not constitute fraud, citing *Johnson* v. *Miller,* 299 Ill. 276, *Burwash* v. *Ballou,* 230 id. 34, *Brady* v. *Cole,* 164 id. 116, and *Kenner* v. *Harding,* 85 id. 264. In the *Johnson case,* which involved a bill to rescind an exchange of town and farm property, the party who had traded for the farm sought to recover his town property on the ground that the value of the farm was not as it had been represented. The court said: "It seems clear from the testimony that he was not defrauded or misled by false representations made by anyone as to the value of the land. He had the opportunity by his visit to the farm to ascertain and determine its value, and it was his duty to make use of such opportunity. The law charges him with knowledge he might have obtained by making use of the means afforded him. Where no deceit has been practiced which ordinary prudence could not detect, the law will not assist a man capable of taking care of his own interests because he makes

a bad or losing bargain. It is only in cases where the parties have not equal knowledge or means of knowledge as to the value of a property that equity will afford relief on the ground of fraud and misrepresentations. Representations as to value of property, though exaggerated, do not ordinarily afford ground for setting aside a contract, and are never made the basis for relief where the party claiming to have been deceived had ample opportunity to know of the truth or falsity of the representations. If they are made with the intention of procuring them to be acted upon without investigating their correctness, and a party does so rely on them and act, equity may afford relief." In the *Brady case* it is said that promises for the future and hope of realizing speculative profits are not present fraud, and to constitute fraud they must be of a fact at the time or previously existing. The *Burwash* and *Kenner cases* lay down the rule that "puffing" statements and expressions of opinion upon matters involving no special knowledge, and as to which the other party is equally able to arrive at a conclusion of value, are not misrepresentations. Similar rules are laid down in *Dickinson* v. *Dickinson,* 305 Ill. 521, *Bouxsein* v. *Granville Nat. Bank,* 292 id. 500, and *VanGundy* v. *Steele,* 261 id. 206, also cited by appellants.

In passing upon the effect of statements that certain amounts were being paid as bonuses for oil leases in the vicinity of the injured party's land, this court said in *Douglass* v. *Treat,* 246 Ill. 593: "The representation as to what bonuses were being paid in the neighborhood of appellee's land was a representation of a matter of fact and not the expression of an opinion. While it is true that statements as to the value of property are ordinarily considered as mere expressions of opinion and are for that reason not sufficient to warrant a court in rescinding a contract even though they were false and relied upon by the other party, yet the rule is otherwise where the misrepresentation relates to some specific extrinsic fact which materially affects the

value, and in such case, if the fact is one peculiarly within the knowledge of the party making the statement and the statement is made with a knowledge of its falsity or what the law regards as the equivalent thereto, and with an intent that it shall be acted upon, and it is acted upon to the injury of the other party, such representation will amount to such fraud as will warrant a court of equity in setting aside any contract induced, in whole or in part, by such representation."

Unquestionably the cases cited lay down principles which are decisive of the point of law here involved, and, applying them to the present case, the conclusion necessarily follows that if the chancellor's findings were warranted appellants were guilty of such fraud as to justify rescission of the contract. The chancellor found that in the written agreement appellants represented the rentals from the property to be a certain sum per month, whereas by reason of the concealed concessions it was, in fact, much less, and that appellees relied upon these representations. A statement that a specific sum of money is being paid in rentals each month is not ordinary "puffing." It is not a mere expression of opinion. It is a statement of present fact. Here it was a statement of fact as to matters of which appellees had no private knowledge and concerning which they had no open or reliable avenue of information whatever. Whether the building was new or old matters not. It would be idle to say that appellees were not warranted in relying on the statement, and it would be equally idle to assert that such representation was not material. It was amply shown by the testimony of expert witnesses that the value of such property as that here in question and the actual rental return therefrom are indissoluble. This conclusion is supported by well-considered authorities in many other jurisdictions.

In *Champneys* v. *Irwin*, 106 Wash. 438, 180 Pac. 405, there was an exchange of a ranch for city apartment property. During the preliminary negotiations the

apartment owner had submitted a rental list in form almost identical with the one attached to the contract in the present case. After taking possession the former ranch owner found that the list submitted had over-stated the income. The court said: "The question, therefore, is whether the appellants, as a matter of law, are to be charged with knowledge of the falsity of the statement. Even though they inspected the property, they would not be charged with knowledge of facts which were peculiarly within the knowledge of the other party and which could not be easily ascertained by an investigation. * * * To deceive relative to the earnings of a property is to deceive concerning a material matter, and, when such misrepresentations are proven, entitle the injured to relief. The statement of net income, when made, must be true. The appellants had a right to rely upon this statement, and it can not be said, as a matter of law, that the falsity thereof could have been ascertained by reasonable investigation. What the income of the property was, was a matter peculiarly within the knowledge of the owner of the apartment house. There is no rule of law which required the appellants to act on the assumption that the statement as to the matter of income was false. To determine whether the statement made as to the income was correct or incorrect, the appellants were not required to visit each of the eighteen apartments and inquire of the tenants therein the amount of rent being exacted, in order to determine whether they were being deceived."

Other cases laying down the rule that misrepresentations as to rents and income from property or businesses are material and that they may be relied upon without investigation, are *Mignault* v. *Goldman,* 234 Mass. 205, 125 N. E. 189; *Boles* v. *Merrill,* 173 Mass. 491, 53 N. E. 894; *Sherwood* v. *Salmon,* 5 Day, 439; *Forster* v. *Wilshusen,* 14 Misc. 520, 35 N. Y. Supp. 1083; *Hecht* v. *Metzler,* 14 Utah, 409; *Pattiz* v. *Semple,* 12 Fed. (2d ed.) 276.

Appellants contend as a question of fact that the decree with reference to the making of the misrepresentations is not supported by the evidence. Consideration of the evidence does not lead to such conclusion. Robert V. Fonger testified that before the contract was signed he gave appellee Henry Noll a certain listing memorandum, and identified as such a document dated "12/8/24," which was introduced in evidence. It bore data descriptive of the Rogers avenue property and showed the existing rental thereof as $18,100. Fonger further testified that this was the figure listed by "the owners" as the total annual rental of the building. He also identified a further exhibit which he made and submitted to Noll before the contract was signed, in which, using this rental total as a basis, he figured the annual profit that would accrue from operating the building. Coming to the contract of December 11, 1924, it recites that the conveyance of the Rogers avenue property is to be "subject to (1) existing leases expiring as per exhibit 'A' attached, the purchaser to be entitled to the rents accruing after the delivery of the deed hereunder." Exhibit "A" attached to the contract is a rider, entitled "Leases and expirations of property at 7415-23 Rogers avenue." Four separate columns are headed "location," "description," "monthly rental" and "expiration," respectively. Under these headings are shown the location and description of the sixteen apartments and a monthly rental figure for each. In the "expiration" column, dates are given for fourteen of these apartments, four of such dates being "9/30/25," one "10/31/25," one "4/30/26," four "9/30/26," one "10/31/26" and three "9/30/27." Computation of the total annual rental resulting from the figures shown on this list shows it to be $18,060, or within $40 of the figure given by appellants to Fonger and by him turned over to appellees, as above mentioned, before the contract was signed. Elmer T. Milburn testified that he was a salesman for R. V. Fonger & Co.; that he called Gustav Seegren

and told him that to draw a contract Fonger & Co. had to get a schedule of rentals on the building; that Seegren went into Ferguson & Neumann's office while he (Milburn) waited outside, and that Seegren brought out and turned over to him (Milburn) the schedule of leases shown in exhibit "A." Fonger testified that he and Milburn made out the contract. Noll testified that he did not sign the contract until after he had turned it over to his attorney, who read it over and told him it was all right. Thereafter it was signed by the Seegrens and the Petersons. The record shows that under date of November 26, 1924, Seegren and Elmer Peterson, signing as "joint owners," addressed a letter to Ferguson & Neumann in which the first paragraph was as follows: "We hereby confirm, agree to and guarantee concessions allowed to tenants in the Malvern building, at 7415 to 23 Rogers avenue, by you as our authorized agents." Then follows a detailed statement of concessions to eleven named tenants, in substance as follows: One of $17.50 per month for a year on a $100 per month lease; one of $10 per month for one year and five months on an $85 per month lease; one of $15 per month for eleven months on a $115 per month lease, with option to rent for another year at $100 per month; one of free rent for December, 1924, and $17.50 on the rent for November, and each of the other months to September 30, 1926, on a $100 per month lease; one of free rent for December, 1924, and $10 on the rent for each of ten other months on a $90 per month lease; one of $5 per month for twenty-two months on a $100 per month lease; one of $47.50 on November, 1924, and $5 each month thereafter to September 30, 1926, on a $100 per month lease; two of free rent for November, 1924, and two of $60 on the month of October, 1924. That these concessions had been granted is confirmed by the testimony of a number of the tenants named in this letter, as well as by comparison of various leases, receipts and letters which were introduced in evidence, to say nothing of the admis-

sions of appellants themselves. The case presents, therefore, a clear showing of knowingly putting tenants in possession under leases not indicative of actual compensation paid for occupancy. It would be difficult to find a more clearly-defined misrepresentation of the actual rentals paid than that made during the negotiations prior to the contract here involved and by the data contained in the contract itself, and with which appellants are directly chargeable.

Counsel for appellants say that none of the parties had ever met each other until nineteen days after the contract was signed; that Fonger and Milburn, who conducted all the negotiations, were found not guilty of any fraud and therefore appellants could not be guilty of any; that because Fonger drew the contract, appellants are to be favored in all questions bearing on the interpretation of the document; that appellees had legal advice before signing and appellants had none. All these suggestions are, under the present record, beside the point.

Counsel further argue that there is no showing that appellees relied upon the representations. Before the contract was executed appellants had furnished a total annual rental figure as above stated and it was turned over to appellee Henry Noll. This figure in total was approximately the same as the detailed statement attached to the contract. In view of the fact that appellants seek to prevent appellees from rescinding the contract containing the representations, they can hardly go so far as to deny that appellees executed it and thereby adopted its provisions. Appellees identified it at the hearing as the instrument which they signed. Counsel for appellants offered no objection to its being introduced in evidence. Exhibit "A" thereof was not a collection of massive paragraphs in fine print, such as are found in some printed forms and which one executing the instrument might be moved to pass over without reading, but a conspicuous typewritten rider just above the place for signatures. Appellees had themselves sub-

mitted a detailed rental statement of their Orleans street property, which was attached as exhibit "B" along with exhibit "A." The master, in whose presence the contract was identified and introduced in evidence, found: "That as exhibit 'A' to the said contract of December 11, 1924, and as a part thereof, the monthly rental of said Rogers avenue property was stated by the defendants Seegren and Peterson to be the total sum of $1505, as follows:" (setting out rider.) On May 25, 1926, appellants filed as an amendment to their cross-bill a copy of the contract, to which were attached exhibits "A" and "B." We would not be warranted in setting aside the findings of the chancellor that appellees relied upon the honesty of appellants and the correctness of the statement of rentals in the contract. *Union Colliery Co.* v. *Fishback,* 299 Ill. 165.

Counsel for appellants insist further that there is no showing that "any of the parties" were capable of knowing or understanding exhibit "A" and the reference thereto in the contract. If counsel mean this statement to apply to appellees, only, they merely confirm the contention that appellees were taken advantage of. They do not help their case if they mean by the statement to include their own clients as well as appellees, for appellants cannot, under such circumstances as are here presented, escape the consequences of their fraud by claiming that they did not understand what they represented. As this court said in *Borders* v. *Kattleman,* 142 Ill. 96, (an action to rescind a sale of property on the ground of fraud) : "Nor is it important that it should be affirmatively found that the untrue representations should have, in fact, been known to appellants to be false. It is well settled that it is immaterial whether a party misrepresenting a material fact knows it to be false or makes the assertion of the fact without knowing it to be true, for the affirmation of what one does not know to be true is unjustifiable, and if another act upon the faith of it, he who induced the action must suffer and not the

other." This doctrine was further approved in *Wisherd* v. *Bollinger,* 293 Ill. 357.

Counsel for appellants insist, in effect, that if, in spite of misrepresentations as to one element of value, the Rogers avenue property was actually worth what the appellees were led to believe it was, there can be no rescission. Assuming the correctness of such contention, appellants cannot here take advantage of it. The master and chancellor found that the property was, in fact, worth much less than the represented value. This finding was warranted and must be allowed to stand. *Union Colliery Co.* v. *Fishback, supra.*

Appellants insist that the finding that the Orleans street property was worth the contract figure is unwarranted, that there are no allegations in the pleadings to raise such an issue, and that there is no proof to support it. Appellants' answer to the original bill raises this issue. Appellants' cross-bill raises it in alleging that the trade value of the Orleans street property was fixed at a sum greatly in excess of its actual value and pointing out detailed reasons why this is claimed. As to evidence of value, exhibit "B" of the contract is a detailed and complete rental list of the Orleans street property. The standing of such evidence on the question of·value of apartment property has already been sufficiently discussed. We cannot disturb the finding in this regard. (*Union Bank of Chicago* v. *Gallup,* 317 Ill. 184.) The loss of appellees unless the contract be rescinded is amply shown.

It is argued that even if false representations were made and relied upon to the injury of appellees, they elected to settle, and did settle, their claim, if any, in that regard. In following up this argument appellants point first to the proceedings of December 30, 1924. The chancellor found that when the transaction was consummated on that date appellees had no knowledge of any of the concessions with the exception of three which were then disclosed; that Elmer Peterson and Gustav Seegren at that time informed com-

plainants that there were no other concessions to the tenants of the property; that the leases were delivered to appellees at that time and showed the same rentals as set forth in the contract of December 11, 1924, and showed no concessions of any kind. This being so, nothing that was done at this meeting can be held to foreclose appellees from seeking rescission when they later discovered further misrepresentations made in the original contract and renewed when the deal was being completed. That there were a number of other concessions than the ones disclosed on December 30, 1924, was satisfactorily proven—more than that, it was admitted by appellants. Seegren testified on direct: "We discovered the day after the deal was closed that we had overlooked three concessions, and we figured up what they would amount to and turned the amount over to the agents, for them to turn over to Noll." Under cross-examination he stated that he knew about the concessions before Noll signed the contract.

Counsel next point to the arrangement whereby the rental agents were placed in funds to pay the full rentals shown on the face of the remaining leases in connection with which concessions were not disclosed, and argue that "appellees have received every cent coming to them under the various leases in question and as apportioned under the contract;" that "they received all they were entitled to;" and that Noll's action in accepting payment of this amount on March 21, 1925, when Seegren, Peterson and Noll met at the office of Ferguson & Neumann, coupled with the fact that he has not made return of the money he then received, constitutes a bar to the present suit. The answer to this is, that this money stood for two separate and distinct things: the one, a balance due per contract under apportionment of actual rentals as represented; the other, a measure of a defined over-valuation of the basic value of the premises, arising directly out of appellants' misrepresentations. Noll testified that at this March 21 meeting

he learned about all these further concessions for the first time. At this meeting Ferguson & Neumann withdrew from the agency. Appellees had never paid Ferguson & Neumann all they owed on commissions. A balance was struck. It does not appear that Noll received any money at this time except by way of credit, and it is further shown that Seegren advanced $300, which was paid over by Noll to Ferguson & Neumann and for which Noll signed a note so that the accounts between Ferguson & Neumann and appellees could be finally settled and closed. Noll's testimony regarding these transactions was to the effect that he "really couldn't get no understanding out of it." Whatever may have been the motive, purpose and understanding of Seegren and of Ferguson & Neumann at this meeting, the record discloses no facts from which it would be proper to presume that Noll compromised, or intended to compromise, on any question of value of the premises. Nor, under the circumstances, is appellants' case particularly helped by the argument that "the borrowing of the $300, alone, has been held a sufficient waiver of the relief in question and to eliminate the question of fraud." It might fairly be said that on March 21, 1925, Seegren's interest lay decidedly in the direction of getting controversy allayed all along the line and putting appellees in a position where they either could not or would not take such legal action as they have here done. So far as return of any amounts that may be due appellants is concerned, as pointed out elsewhere, appellees in their bills made offer to do equity and asked an accounting, and an accounting is provided for by the decree entered in the case.

It is urged that appellees are barred from action to rescind because they exercised acts of ownership over the Rogers avenue property and delayed too long in giving notice of rescission. In support of this contention counsel cite a number of cases announcing the settled rule that a party to a contract who claims to have been defrauded and who

seeks rescission of the agreement must act promptly in announcing his election and offer to place the other party *in statu quo*. After the transaction was consummated on December 30, 1924, Ferguson & Neumann continued to collect the rents and pay them to appellees until March 21, 1925, at which time, as above shown, they ·gave up the agency and Noll learned about all the other concessions for the first time. The original bill was filed on May 12, 1925. Taking into consideration the intricacy and general character of the case, it cannot be said that appellees indulged in any undue delay in filing their bill to rescind. Nor, as insisted by counsel, was the knowledge of Ferguson & Neumann in the matter of the concessions the knowledge of appellees, making the time of discovery by appellees December 31, 1924, or whatever date appellants disclosed the remaining concessions to Ferguson & Neumann. Those who here seek to benefit by application of the general doctrine that notice to the agent is notice to the principal had had extensive dealings with these agents up to December 30, 1924. With the closing of the deal there came a technical hiatus in the agency, Ferguson & Neumann ceasing to be agents for appellants, with whom they were on terms of business familiarity, and becoming agents for appellees, with whom they had yet to become acquainted. Appellants say that on the very next day they went to Ferguson & Neumann, told them about additional concessions and paid them money to be applied thereon. The master and chancellor found that Ferguson & Neumann complied with the instructions given them by appellants as to handling this money. This finding was warranted. Thus the agents, in fact, continued to represent their old principals in spite of their obligation to the new. This court has recognized well-defined exceptions to the rule above contended for by counsel, and the circumstances disclosed by the record of the present case certainly bring it well within the exceptions thus announced. *Cowan* v. *Curran*, 216 Ill. 598.

As to the matter of restoration of the whole consideration received, in both the original and the final amended bills appellees made tender of the Rogers avenue property, made an offer to do equity and asked that an accounting be had. Appellees are not barred from maintaining the present action because of any failure to make proper tender or undertake any other equitable measure necessary to putting the parties *in statu quo.*

Appellants advance the argument that Fonger acted as appellees' agent; that appellants never authorized him to make any representations as to the income of the property; that "he was not authorized to make on their behalf any misrepresentations with reference to the property." They argue further, however, that "all knowledge acquired by the broker, Fonger, was in law the knowledge of appellees; and this is true, under the cases, whether such agent was acting for both parties or for them alone." Applying counsel's latter contention to the facts, it would make no difference on the issue as to misrepresentations as to rentals whether appellants authorized Fonger to make them or not. When appellants placed Fonger in possession of knowledge in the way of the rental data they *ipso facto* placed it before appellees. The legal effect was hence the same as if Fonger had not participated in the deal at all. Appellees' case is not based upon representations that originated with the broker, Fonger. If it were, appellants' argument on this point would be with better reason. From any point of view, so far as rental representations are concerned, Fonger was a mere passive vehicle for conveying appellants' representations to appellees. He did not at any time material to the present issues come into possession of knowledge that would bar appellees' suit, even if it were chargeable to them. He did not know of any concessions before and at the time when the contract was signed. When he was put on inquiry about them later, and before the deal was closed, he passed on the information to Noll. Three came to light

when the deal was closed, as heretofore shown. The record does not show that Fonger was at any time in possession of knowledge of the full nature and extent of the concessions, and appellees' case is not weakened by any knowledge of his with which they were chargeable.

Taking up, finally, the contention of appellants that the chancellor committed error in his rulings on the pleadings, counsel assert that the effect of such rulings was to enter a decree on issues not joined as to several parties and on issues variant from those raised by the bill, and that appellants were otherwise prejudiced.

As to the amendment permitted during the progress of the hearing before the master, whereby appellees added averments to the effect that appellants had sold the Orleans street property to Louis Sterlek and that the proceeds of such sale were impressed with a trust in favor of appellees, appellants were ruled to answer in ten days. They waited twenty-one days and filed a demurrer. In the absence of any showing that the bill to which the demurrer was filed was not good, it must be said that there was certainly no error in striking the demurrer from the files and ordering that the answer to the original bill stand as the answer to the bill as amended. *Kilgour* v. *Crawford,* 51 Ill. 249.

In connection with the action of the chancellor in allowing the final amended bill to be filed after hearing and report by the master, counsel cite a number of authorities which hold that where a bill is amended to introduce new issues, it is error to enter a decree thereon without giving defendants opportunity to answer and be heard on the new issues thus raised. Such is the rule. (*Bauer Grocer Co.* v. *Zelle,* 172 Ill. 407; *Adams* v. *Gill,* 158 id. 190; *Gage* v. *Brown,* 125 id. 522.) In the present case appellants were not only given opportunity to answer but were ruled to do so. They proceeded to file a demurrer, which was stricken from the files, and they were again ruled to answer. They then filed a lengthy answer which was in turn stricken

from the files, and the court ruled that their original answer should stand as an answer to the final amended bill. To each of these rulings in turn appellants now point as error.

Allowing the final amended bill to be filed was in itself within the discretion of the chancellor, and no abuse of such discretion is here shown. (*Gordon* v. *Reynolds,* 114 Ill. 118; *Soltysik* v. *Soltysik,* 317 id. 247; *Village of Avery-ville* v. *City of Peoria,* 335 id. 106.) Nor does it appear that appellants have substantial ground for complaint upon any of the several rulings subsequent thereto. The final amended bill introduced no substantial variance of issues. Counsel say the issue was varied because whereas under the original amended bill it was alleged that appellants turned over to Ferguson & Neumann money sufficient to conceal concessions for two months, only, under the final amended bill it was alleged that sufficient money was turned over to cover the whole period of the leases. The issue was whether appellants misrepresented the rentals before and at the time when the contract was signed and when the deal was closed, and such misrepresentation was well established by proof altogether apart from the payment of concession money by appellants to Ferguson & Neumann. Under the original amended bill the fraud was calculated to go undiscovered for two months. Under the final amended bill it would presumably have come to light, in the natural course of events, only when leases ran out and there was talk of renewal at the old figure. The issue whether there was fraud was the same in either case.

Counsel assert, further, that the final amended bill prayed for different relief, in that it asked for the contract price for the Orleans street property instead of the property itself or the market price, as originally prayed. It was brought out on the hearing that appellants had conveyed away this Orleans street property. They could not re-convey it. Appellants say that because of this amendment they were precluded from being heard on the question

of fair market value of such property as of December 30, 1924. The issue of value was raised in appellants' answer to the original amended bill, and nothing is shown to have prevented appellants from offering such proof had they so desired. They say that the burden of proof was not on them to show such value, yet in their brief they claim that from the record they, and not appellees, should have been granted relief because they showed the value of the Orleans street property to have been $9000 less than the contract figure. Nor must it be forgotten, as already pointed out, that appellants had filed a cross-bill, in which they alleged that the value of the Orleans street property as fixed in the contract "was greatly in excess of its actual value," detailing the reasons why. This being so, and with the record containing a decree finding that the property was reasonably worth the contract figure, and with evidence in the record which must be held to support this finding, as pointed out elsewhere, we see no substantial merit in this contention.

Appellants claim that error was committed in entering a decree under the final amended bill without an order defaulting the Capital State Bank. The bank is not an appellant. Unless appellants were injured by this action they are not in position to assign error thereon. (*Rose* v. *Hale,* 185 Ill. 378.) The allegations of the final amended bill with respect to the bank do not differ, in substance, from those of the original amended bill. The bank had duly answered the original amended bill. No new issue was here brought into the case. Appellants have no substantial ground for complaint in this particular.

The decree of the superior court of Cook county is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*