(No. 20450.—

BARNET KANTER *et al.* Appellees, *vs.* FRANK KSANDER *et al.* Appellants.

*Opinion filed April 23, 1931—Rehearing denied June 4, 1931.*

BARTHELL & RUNDALL, for appellants.

SISSMAN & SISSMAN, (PETER SISSMAN, of counsel,) for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

This appeal is from a decree of the superior court of Cook county foreclosing a trust deed and dismissing a cross-bill seeking a cancellation of the trust deed and the notes secured by it, the setting aside of an exchange of real estate between the grantors in the trust deed and the payee of the notes secured by it, and the deeds by which the exchange was effected.

Frank Ksander and Antonia, his wife, were the owners of certain real estate consisting of three lots on Potomac avenue, in the city of Chicago, on which were three apartment buildings, and Barnet Kanter at the same time owned certain real estate on Hermitage avenue, in the city of Chicago, on which was an apartment building consisting of twenty-three apartments and two store rooms. The Ksander property was subject to a mortgage for $33,500 and the Kanter property to a mortgage of $75,000. On December 29, 1927, the owners entered into a contract to exchange the Ksander property at $85,000 for the Kanter property at $162,500, each subject to the mortgage then on it, and for the difference in value ($36,000) the Ksanders were to give to Kanter their notes secured by a trust deed on the property conveyed to them by Kanter. The conveyances were made, the notes and trust deed executed and the transaction was completed on March 1, 1928. On January 21, 1929, $31,500 remained unpaid on the notes, there was a default in the payment of one of the notes and of interest, and Herman M. Mendelsohn, the trustee, and Kanter, the owner of the notes, filed a bill for the foreclosure of the trust deed, subject to the prior mortgage for $75,000.

The Ksanders answered the bill, alleging that Kanter, before the contract for the exchange of properties, represented to the defendants that the gross annual rental from the premises conveyed to the Ksanders was $19,380 and the annual expense $11,138, leaving a clear annual profit of $8252; that these representations were knowingly false and were made with the intention that the defendants should rely on them, and that relying on their truth the defendants were induced to purchase the premises, and as part of the purchase price executed and delivered the $36,000 of notes and the trust deed sought to be foreclosed; that the representations were false, in that secret rent concessions had been granted to the tenants, whereby the gross annual rental was materially reduced below $19,380 and the annual expenses of operation were considerably more than $11,138. The defendants also filed a cross-bill, making the same allegations as the answer, and stating further that they were Bohemians by birth, who emigrated and came to this country many years ago; that Frank was seventy-two years old and his wife seventy; that they were not well versed in the English language but had great difficulty in either speaking or understanding it; that Frank was a tailor, with little knowledge of business transactions, and Kanter had been for many years an experienced contractor and builder, with full knowledge of real estate values and business generally. The cross-bill further alleged that the Kanters conspired with the real estate agents who were managing the property and collecting the rents for them, to defraud the cross-complainants by soliciting them to make the exchange, stating that they would then possess a clear annual income of $8000 and giving figures wholly false in support of these and other false statements; that attached to the contract of exchange was a list of tenants of the property with a statement of the rents payable by each, and the contract expressly stated that no concessions of rent had been granted; that the actual monthly rent of the property, as

was well known to cross-defendants, was much less than the sum listed in the contract by reason of secret rent concessions granted to the tenants; that the cross-defendants misrepresented in the contract, and orally, that the property was worth $162,500 and was in good and tenantable condition, and such false and fraudulent representations were made in pursuance of a conspiracy to defraud the cross-complainants. The cross-bill prayed for a re-conveyance to them of the property conveyed to Kanter, a cancellation of the trust deed and the unpaid notes, the re-payment of the notes which had been paid, with interest, an accounting of the rents received by Kanter, and offered to re-convey the property conveyed to the cross-complainants and to account for rents received by them.

After the exchange of conveyances the grantees went into possession of the property conveyed to them, respectively. The appellants occupied one of the apartments in the property conveyed to them and collected the rents and paid the expenses of the property and made payments of interest and principal on the first mortgage. On January 9, 1929, Ksander wrote to Kanter demanding a cancellation of the whole transaction. In this letter he said: "I have just discovered that in addition to the misrepresentations as to the expense of operation, you had given to practically every tenant of the building when it was turned over to me a secret concession amounting to a material portion of the year's rent. We have already interviewed the tenants and I now have in my possession signed statements from them to the above effect. The existence of this situation as to concessions explains why, when the leases were renewed last May, we had to give reductions in rent running all the way from $2.50 to $10 per tenant per month. This, as you know, has resulted in my receiving a reduced rental, with which it is futile to attempt to meet the expenses of operation and the mortgage pre-payments." The letter relied upon other grounds for rescission, but those grounds are

not urged on this appeal. The contract of exchange included a list of the renters of the property and contained an express statement that no concession had been given on any of the leases.

On the hearing before the master twenty of the tenants of the building testified, eighteen of them that they became tenants on leases executed before May 1, 1927, for terms beginning May 1, 1927, one that she became a tenant upon a lease for a term beginning October 1, 1927, and one for a term beginning June 15, 1927. When the leases for terms beginning May 1, 1927, were executed the apartment building was just being completed and all leases then executed were for terms to begin May 1. Each of the eighteen went into possession of the apartment leased to him some time before May 1, the first moving in on March 15 and occupying the apartment on April 1, two others moving in on April 1, one on April 7, and the remainder from April 14 to April 20. The tenant whose term began on October 1 moved into the apartment about the middle of September and the one whose term began on June 15 moved in on June 5. The master found these facts and that the building was not entirely complete when most of the tenants moved in, and that the so-called concessions were those usually made to tenants moving into a new and not wholly completed building and were not such concessions as are contemplated by the statute prohibiting concessions. The evidence showed that the building was complete when the tenants moved in, except that the carpets had not been laid in the halls. It does not appear when the appellants learned of the facts with relation to occupancy of the premises by tenants before their terms began, and the master found that the appellants were guilty of *laches* in not sooner making their claim for rescission, and that the equities in the case were with the complainants and against the defendants and cross-complainants, and that the cross-bill should be dismissed for want of equity.

The appellants have argued but one question, and rely for reversal upon the single proposition that the existence of secret rent concessions, as found by the master, required a decree in favor of the appellants on their cross-bill.

For the purpose of regulating the practice of making or using written leases of real estate which because of concessions to the lessees do not truly state the real net rent being paid, so as to mislead prospective purchasers and lessees and lenders of money on the security of such real estate into a belief that the rental value or market value thereof is greater than it really is, the General Assembly enacted a law approved June 26, 1925, requiring that when a rent concession should be made in the case of any lease it should be the duty of the lessor, at the time or immediately after the lease was made, to cause such lease to bear a legend across the face and text thereof, plainly legible and in letters not less than one-half inch in height, consisting of the words "Concession Granted," and to bear a memorandum on the margin or across the face of such lease stating the amount or extent and nature of each such concession, and declaring it unlawful, when a rent concession had been made, for any person knowing of such concession to exhibit such lease to any purchaser or lessee or prospective purchaser or lessee of real estate any part of which was covered by the lease, or to any lender of money or prospective lender of money on such real estate or any part thereof as security, unless such lease shall bear the legend and memorandum required by the act. A rent concession was declared to be made when, in case of a written lease of real estate, the lessor, before or at the time the lease was entered into, in consideration of it, directly or indirectly gave or agreed to give to the lessee, without express mention thereof in the lease, (1) any credit upon the rent reserved by the lease between the parties or rebate of such rent or any part thereof after payment thereof by the lessee, or (2) the right, privilege or license to occupy the

leased premises for a period other than the term created by the lease, rent free or for a rent less than the average rent fixed by the lease for the entire term, or (3) any other valuable thing, right or privilege; provided, however, that repairing and decorating the leased premises by the lessor should not be deemed a rent concession, and that an agreement by the lessor to waive any of the terms or conditions of the lease, other than those relating to the payment of rent, should not be deemed a rent concession. It was further provided that any person violating the provisions of the act by using or exhibiting to any person any written lease or other written evidence of leasing not having endorsed thereon any and all concessions as therein provided, for the purpose of selling or effecting a sale of the premises in question or a loan thereon, should be deemed guilty of a misdemeanor, punishable by a fine of not exceeding $1000 or imprisonment in the county jail for not more than one year, or by both such fine and imprisonment. (Laws of 1925, p. 457.)

This law made no change in the facts necessary to justify in equity the rescission of a contract. It merely made more specific by its definitions the meaning of the term "rent concession." A fraudulent representation as to the actual rents, income and profits derived from real estate and relied on by a purchaser would have constituted a sufficient ground for rescission of the contract of purchase before this law was passed. (*Noll* v. *Peterson,* 338 Ill. 552.) While that case was decided several years after the law went into effect, the facts out of which the case arose occurred in 1924, before the enactment of the law, which, therefore, was given no consideration in the decision of the case. This enactment has not changed the law except by its definition of rent concession and by its prohibition of certain acts and its provision for their punishment. In the present case there was a knowingly false representation of a material fact made to the appellants to induce them to enter into the

contract, which was relied on by them and did induce its making. The finding of the master that the rent concessions made were concessions usually made to tenants moving into a new and uncompleted building was of no importance. The statute makes no distinction between new and uncompleted buildings and other buildings. "Whether the building was new or old matters not." *Noll* v. *Peterson, supra.*

The evidence does not show when Ksander learned the truth about the existence of the rent concessions. The first objection made by the appellants to the contract on account of the misrepresentations was in Ksander's letter to Kanter of January 9, 1929, more than a year after the contract of exchange was entered into and over ten months after the conveyances were made and the appellants went into possession of the property. Some of the leases expired on May 1, after the appellants were in possession, and Ksander mentioned in his letter that they were obliged to accept reduced rentals for the renewed leases. It does not appear whether or not he then learned about the rent concessions and no evidence fixes the date when he did learn about them. A party to a contract who desires to rescind it for fraud must make his election to do so promptly after learning of the fraud. He must announce his purpose and adhere to it. (*Huiller* v. *Ryan,* 306 Ill. 88; *Greenwood* v. *Fenn,* 136 id. 146; *Hansen* v. *Gavin,* 280 id. 354.) In this case the contract was entered into on December 29, 1927, and the conveyance was made on February 24, 1928, while the bill was not filed until January 21, 1929, about eleven months later. It does not appear when the fraud was discovered. It may have been before May 1, 1928. The fraud may have been discovered immediately after the conveyance or immediately after May 1, and no facts are shown to excuse the delay. Because of the unexplained delay the decree must be affirmed.

*Decree affirmed.*