(No. 32186.—

RALPH D. BARTMAN, Appellant, *vs.* KOERT BARTMAN *et al.,* Appellees.

*Opinion filed January 24, 1952—Rehearing denied March 17, 1952.*

J. W. Templeman, of Springfield, for appellant.

Kenneth H. Lemmer, of Havana, (Richard W. Velde, and John L. Knuppel, of counsel,) for appellees.

Mr. Chief Justice Daily delivered the opinion of the court:

Appellant, Ralph D. Bartman, filed a complaint in the circuit court of Mason County seeking specific performance of an alleged contract to convey real estate, or the alternative relief that a certain mortgage and annuity contract, which he had executed and delivered to his father, be delivered up and cancelled. Named as defendants were Koert Bartman, Sr., and Sunkea Bartman, appellant's father and mother, and Kate Diess and Rudolph Diess, his sister and brother-in-law. The parents died while the litigation was in progress and their heirs and representatives have been substituted as defendants. The cause was referred to a master who, after hearing the evidence, recommended that the complaint be dismissed for want of equity. The chancellor entered such a decree and appellant has perfected an appeal to this court.

In 1943, Koert Bartman, Sr., then 84 years old, was the owner of eight farms located in Logan and Mason counties, and was likewise the father of eight adult children. On November 20, he and some of his children con-

sulted the family attorney and discussed a plan for the distribution of his farms. A week later the entire family met in the attorney's office and the parents executed deeds conveying a farm to each of their children except Koert, Jr., who had expressed a desire to receive cash instead of land. It is the eighth farm of 340 acres, which was not conveyed at the meeting, that is the subject of this lawsuit. As a further step in the family settlement, three of the children, Ralph, (the appellant,) and his sisters Amke and Fannie, executed an agreement whereby each was to pay an annuity of $1000 to their parents during the parents' lifetime. The same three children each executed a note for $5000 secured by deeds of trust on the property each had received, and delivered them to their father along with the annuity contracts. There is a contradiction in the record as to whether the notes were made payable to the father or to Koert, Jr., but it was conclusively proved that the latter received the notes as his share of the family property settlement. The farms conveyed to the four children other than Ralph, Amke and Fannie, were unencumbered except that the farm deeded to Redmer Bartman was subject, together with the 340 acres unconveyed, to a mortgage of $15,000 and it was the elder Bartman's expressed intent that the 340 acres be disposed of in such a way as to relieve the lien on the property deeded to Redmer.

The question of the disposal of the remaining 340-acre farm was discussed at both meetings in the attorney's office and at the second meeting the father, who wished the land to remain in the family, offered it for sale to any of the children. Appellee Kate Diess offered to take the land for the amount of the mortgage indebtedness upon it, but her father made no immediate reply to the offer. Appellant testified that he stated he would like to make a bid but was told by his father that the family would meet again in two weeks and that the highest bidder would get the place. This testimony is not corroborated by other persons present

and the father expressly denied the statement attributed to him. While it is not clearly shown, we gather that the offer to sell the 340-acre farm was left open and the children were told to make their offer to the attorney within ten days. Kate Diess saw her father prior to December 10 and told him that she could get a new loan on the farm and offered to buy it for $15,600, the amount of the mortgage and accrued interest. This offer was repeated to the attorney who testified that it was the only offer he received from any of the children. On December 10, the elder Bartmans and Kate Diess and her husband again went to the attorney's office and the farm was deeded to the latter two as joint tenants. They then executed a new mortgage on the 340 acres to an insurance company and procured the release of the old mortgage, thus relieving the parents of personal obligation for the debt and ridding the farm deeded to Redmer of its mortgage encumbrance.

Appellant alleged in his complaint that the annuity contract, note and trust deed executed by him on November 27, were given in consideration of an oral agreement with his parents that appellant would be permitted to purchase the 340-acre farm on December 11 for the amount of the mortgage indebtedness. He also alleged that Kate and Rudolph Diess knew of the oral contract, knew that he had performed his obligations under it and that they had received their deed to the farm on December 10, without consideration and for the purpose of nullifying appellant's contract to purchase. He prayed that the deed to the Diesses be set aside and that his parents be required to specifically perform their oral contract, or, in the alternative that they cancel the annuity, note and trust deed.

Outside of appellant's own statement, there is nothing in the record which supports his contention that he executed the annuity contract, the note and trust deed as part performance of an oral contract to buy the 340 acres. On the other hand, there is much to contradict it. Amke and

Fannie Bartman executed identical instruments obligating themselves to pay their parents an annuity and the sum of $5000, at the same time appellant assumed a similar obligation, and appellant was aware of those facts. It is indeed odd that he now attaches a greater significance to his acts than he attributes to the identical acts of his sisters. The evidence introduced by appellees' witnesses established that the notes executed by the three children represented obligations for money that was to be paid to Koert, Jr., in lieu of his distributive share of the real estate in kind. The Federal gift tax return made by the father after the distribution of his property specifically states that he gave Koert, Jr., the sum of $15,000 represented by the three trust deed notes. There is evidence, too, that the farms distributed to appellant, Amke, and Fannie, were of a greater value than those distributed to the other four children and that they were charged with the payment of the annuity and of Koert, Jr.,'s cash share in order to more nearly equalize the distribution made among the eight children. The annuity contract which appellant signed, itself belies any contention that it was given as a part of the purchase price for the 340 acres, for it recites that it was entered into by appellant in consideration of the conveyance to him of the property upon which it became a lien.

After considering all the evidence, the master and chancellor concluded that it was not sufficient to establish the existence of a contract between appellant and his father for the purchase and sale of the 340 acres, and that the preponderance of the evidence was that no such contract had been entered into, either orally or in writing. No other result could have been reached on the record made. It is difficult to conceive how anyone could claim that a contract for sale of land and a right to specific performance could be based upon the frugal grounds advanced by appellant. His theory of an oral contract is based upon what he calls his "understanding" of his actions in signing the $5000

note and the annuity contract. There is nothing in the record to corroborate him or which could reasonably be said to give rise to such an understanding, or to say that his contention obtains from any meeting of the mind with his father. While we hesitate to say that a claim, which has been pursued through the courts to the extent that this one has, is frivolous, it is apparent that appellant's claim to an oral contract is based upon fancy rather than fact. Appellant was given equal opportunity, along with the rest of the children, to make an offer for the farm, but the nearest thing in the record to show that he did is his testimony that he told his father he would like to make a bid. This was not corroborated by any other persons present at the family meeting. His failure to make an offer to the lawyer within ten days following the family meeting likewise casts doubt as to whether he then had any intention of buying the farm. From all the facts and circumstances of the evidence it must be concluded that appellant's execution of the note, trust deed and annuity contract bore no relation to the 340 acres which he now covets, but that he executed them voluntarily as a condition to the receipt of the farm his father did give him. Nor do we find any other evidence which can be said to establish a contract for the purchase of the farm.

Following the chancellor's ruling on the exceptions to the master's report, and before the decree was signed, appellant sought leave to file an amended complaint for damages against the executor and heirs of the father for the failure of the father, or his representatives and heirs, to carry out the alleged oral contract. He now assigns as error the refusal of the chancellor to grant that relief. It is the rule that the allowance of material amendments to pleadings after the evidence has been closed is a matter largely in the discretion of the chancellor. (*McGlaughlin* v. *Pickerel,* 381 Ill. 574; *Noll* v. *Peterson,* 338 Ill. 552; *Village of Averyville* v. *City of Peoria,* 335 Ill. 106.) Ap-

pellant's motion did not represent an effort to conform the pleadings to the proof in this cause, for the court had already ruled that a contract did not exist and there could, therefore, be no breach upon which to base the damages claimed in the proffered amendment. The chancellor did not abuse his discretion and committed no error.

Our consideration of this case convinces us that the trial court could not do otherwise than to dismiss appellant's complaint, and its decree is affirmed.

*Decree affirmed.*