CRAIG A. JOHNSON, Adm'r of the Estate of Connie Johnson, Deceased, and Adm'r of the Estate of Bethany Johnson, Deceased, Plaintiff-Appellant, v. WILLIAM D. MATVIUW, Defendant-Appellee (Richard F. Whitlock *et al.*, Defendants).

First District (5th Division)   No. 87—2456

Opinion filed November 28, 1988.—Rehearing denied January 3, 1989.

908

PINCHAM, J., specially concurring in part and dissenting in part.

Michael J. McArdle, of Michael J. McArdle, Chartered, of Chicago.

David H. Kistenbroker, Carolyn J. Jones, and Eric E. Boyd, all of Rooks, Pitts & Poust, of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff Craig A. Johnson, as administrator of the estates of his wife, Connie Johnson, and stillborn daughter, Bethany, brought a medical malpractice suit against defendants, William D. Matviuw, M.D., Richard F. Whitlock, M.D., Joong H. Choh, M.D., Jae Eun Han, M.D., and Sherman Hospital in Elgin (Sherman). This appeal involves the granting of summary judgment to Dr. Matviuw, a physician with staff privileges at Sherman. The suit is still pending in the trial court against the remaining defendants. In addition to this appeal on the merits, this court also has before it plaintiff's motion to supplement the record on appeal with transcripts of depositions of two plaintiff experts, taken six weeks after summary judgment was entered, and also defendant's motion to strike plaintiff's briefs or, alternatively, portions thereof relating to the experts' depositions. We agreed to rule on these motions in this opinion. The following facts are relevant to this appeal.

On April 4, 1983, Connie Johnson was admitted to Sherman Hospital under the care of her physician, Dr. Han, for an evaluation of complaints of numbness and pain in her lower right leg, hyperventilation, and chest pain. At the time she was 37 weeks pregnant with an expected delivery date of April 8. Around 7:30 p.m. on April 9, Connie Johnson experienced respiratory and cardiac arrest. A "Code Blue" was sounded, but Dr. Matviuw, who was attending to one of his patients in the hospital, was summoned by nurses calling down a hallway. Upon going into Johnson's room, Dr. Matviuw determined the patient was in apparent respiratory arrest. He inserted an endotracheal tube and began respiratory and cardiac resuscitation at approximately 7:33 p.m. A respiratory care team arrived and it, along with several nurses, also assisted the patient. The patient's attending physician, Dr. Han, arrived at 7:50 and declared that he would take over and needed no further assistance from Dr. Matviuw. At 8:20 resuscitation efforts were stopped and Connie Johnson and her child were pronounced dead. An autopsy revealed that Connie's death was caused by a pulmo-

nary embolism and her child, Bethany, died from a lack of oxygen.

In March 1985, plaintiff sued the aforementioned defendants contending that their negligence caused the deaths. With respect to Dr. Matviuw, his complaint alleges that the doctor was careless and negligent in his treatment of the fetus, Bethany, in that he (1) failed to recognize the complications and life-threatening condition of the fetus; (2) failed to arrange for fetal monitoring; (3) failed to order cardiopulmonary resuscitation of Connie Johnson so as to preserve the fetus' wellbeing; and (4) failed to perform a cesarean delivery of the fetus. Dr. Matviuw answered denying all of the allegations.

On October 1, 1986, Dr. Matviuw filed a motion for summary judgment accompanied by his affidavit wherein he stated that he had met the applicable standard of care in rendering emergency treatment to Connie Johnson and her fetus, such emergency care being his sole contact with decedent and for which he charged no fee. He also asserted that no civil liability could be imposed upon him pursuant to section 2a of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4404 (now Ill. Rev. Stat. 1987, ch. 111, par. 4400−30)), commonly known as the Good Samaritan statute. The motion stated that since no expert testimony or evidence of negligence had been presented by plaintiff, there was no material fact issue and summary judgment was appropriate.

On February 13, 1987, Dr. Matviuw was deposed by plaintiff, who subsequently on March 12 responded to the motion for summary judgment and filed a motion to strike Dr. Matviuw's affidavit. At a pretrial conference on March 12, plaintiff disclosed one of his expert witnesses. On March 20, Dr. Matviuw filed a reply to plaintiff's motion to strike and filed a complete transcript of his deposition in support of his motion for summary judgment. In compliance with a pretrial discovery order, plaintiff on May 1 indicated that he had identified his expert witnesses and would take their depositions in California on August 19.

A hearing was held on the summary judgment motion and the motion to strike on July 1, 1987. The trial court denied plaintiff's motion to strike and granted summary judgment in Dr. Matviuw's favor. In so doing, the court denied plaintiff's request for a continuance until after his experts were deposed, noting that the request was untimely since the summary judgment motion had been pending since October 1, 1986. The court granted summary judgment on the basis that plaintiff had not presented a shred of medical evidence that Dr. Matviuw had done anything wrong in counterpoint to his affidavit and deposition testimony that, in his opinion, "based upon a reasonable degree of medical and surgical certainty, that [he] did not deviate in any respect

from the applicable standard of medical care in [his] care and treatment of Connie Johnson or the fetus, Bethany Johnson." The court also found that section 2a (Ill. Rev. Stat. 1985, ch. 111, par. 4404) was applicable, under these circumstances, to emergency situations in a hospital. This appeal followed.

On appeal, plaintiff asserts that (1) summary judgment was improper since Dr. Matviuw's affidavit was conclusory and self-serving; (2) summary judgment was premature since plaintiff's experts had not yet been deposed; (3) as a staff member of Sherman, Dr. Matviuw had a preexisting duty to assist Connie Johnson, therefore precluding application of section 2a; (4) section 2a applies only to situations arising outside of a hospital; and (5) a bill for Dr. Matviuw's services was rendered, thus removing him from the protection of section 2a.

For the reasons that follow, we affirm the trial court.

■■ We must first rule on plaintiff's motion to supplement the record and defendant's motion to strike and for sanctions. Supreme Court Rule 329 sets forth the procedure by which a party may supply omissions, correct errors, and settle any controversy as to whether the record on appeal actually reflects what occurred at the trial level. (107 Ill. 2d R. 329.) This rule has been construed to authorize supplementation of the record only with documents that were actually before the trial court. *State Farm Mutual Automobile Insurance Co. v. Stuckey* (1983), 112 Ill. App. 3d 647, 445 N.E.2d 791.

■ Our supreme court in the medical malpractice case of *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 468 N.E.2d 1162, refused supplementation of the record with a doctor's deposition taken after the trial court proceedings. The *Jenkins* court noted that the deposition was unnecessary to fully and fairly present the question involved and, further, that the deposition could not be characterized as an omission under Rule 329 since it was not in existence when the trial court's order was entered. Therefore, we must deny plaintiff's motion to supplement the appellate record with material not before the trial court. We deny defendant's motion to strike plaintiff's brief, preferring instead to disregard any material in the briefs and/or appendix that is not supported by the record so that the issues can be decided on their merits. See *Mead v. Board of Review* (1986), 143 Ill. App. 3d 1088, 494 N.E.2d 171.

The trial court granted summary judgment on two independent grounds: there was no material issue of fact and the Good Samaritan statute exempted Dr. Matviuw from liability. We will discuss both bases for the trial court's ruling because of several contrary assertions regarding the record.

■■■ We turn our attention first to plaintiff's argument that Dr. Matviuw's affidavit was insufficient. Illinois Supreme Court Rule 191 requires that affidavits in support of summary judgment be made on the personal knowledge of the affiant, setting forth specific evidentiary facts to which the affiant could competently testify. (107 Ill. 2d R. 191(a).) Here, Dr. Matviuw's affidavit meets these requirements. It is well established that a defendant physician may submit his own affidavit as evidence of the applicable standard of care in support of a summary judgment motion in a medical malpractice action; such affidavit must then be contradicted by the plaintiff to avoid entry of summary judgment. (*Solon v. Godbole* (1987), 163 Ill. App. 3d 845, 516 N.E.2d 1045.) Furthermore, when Dr. Matviuw's affidavit is considered in tandem with his deposition, which contained more detailed facts regarding the standard of care rendered, plaintiff's allegations of negligence were refuted as a matter of law. Thus, no disputed issue of material fact remained absent any opposing affidavits by plaintiff.

This brings us to plaintiff's assertion that summary judgment was premature since his expert witnesses had not yet been deposed.

■■■ The rule is clear: summary judgment is proper where the pleadings, depositions, and affidavits on file establish there is no genuine issue of material fact, and when no conflicting affidavits and depositions have been filed, the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) In such actions, failure to file counteraffidavits leaves an opponent of a summary judgment motion at risk since assertions in the movant's affidavit must be taken as true even though the opponent's pleadings contain contrary assertions. (*Eberlee v. Brenner* (1985), 131 Ill. App. 3d 394, 475 N.E.2d 639.) In medical malpractice cases, a plaintiff must present expert medical testimony to establish the duty of care and breach thereof by a defendant physician. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) Plaintiff contends that since discovery had not been completed, summary judgment was premature. Defendant argues that plaintiff had sufficient opportunity to obtain the necessary affidavit and, further, he should have sought relief pursuant to Supreme Court Rule 191(b) (107 Ill. 2d R. 191(b)).

The case law regarding this issue appears to resolve it on a case-by-case basis. Where unfairness has resulted, summary judgment is reversed; where a party opposing the motion had ample opportunity to obtain counteraffidavits but did not do so, summary judgment is affirmed. See *Hansbrough v. Kosyak* (1986), 141 Ill. App. 3d 538, 490 N.E.2d 181 (summary judgment for defendants entered 10 months after complaint filed reversed because ruling that plaintiff had filed late

counteraffidavit where there was no deadline for disclosure of expert witness was error); *James v. Yasunaga* (1987), 157 Ill. App. 3d 450, 510 N.E.2d 531 (summary judgment for defendant affirmed where no timely reason was shown for failure to contradict defendant's expert affidavit and where court had set scheduling and disclosure deadlines which plaintiff failed to meet); see also *Goldstein v. Kantor* (1981), 101 Ill. App. 3d 264, 427 N.E.2d 1322.

However, the case of *Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 420 N.E.2d 810, is more similar to the present case. In *Prather*, plaintiff filed her original complaint in October 1976 and an amended complaint in February 1979. In June 1979, plaintiff disclosed the names of two expert witnesses and disclosure was to be closed as of October 1, 1979. In June 1980, defendant moved for summary judgment and plaintiff objected to the motion, asking for reopening of disclosure and stating that she had her experts and had received information from them but needed more time to develop her case. The motion to reopen discovery was denied because plaintiff had failed to give a good reason to do so. Summary judgment was granted to defendant on July 23, 1980. This court rejected plaintiff's contention that summary judgment entered 1½ months after the motion was filed was premature, noting that the case had been pending for almost four years.

█ Although, in the present case, plaintiff did not violate any discovery orders, as was done in *Prather*, he had ample opportunity to obtain a written opinion from one of his experts that Dr. Matviuw had been negligent. Plaintiff's complaint was filed two years and three months before the summary judgment hearing; the summary judgment motion was filed nine months prior to the hearing; more than four months before the hearing, a filing schedule was set for only the summary judgment motion and Dr. Matviuw's deposition was taken; in March, plaintiff moved to strike the doctor's affidavit as insufficient and contended that the Good Samaritan statute was inapplicable, attaching medical charts, Sherman's constitution, bylaws, and rules and regulations plus a bill for services rendered to decedent; also in March a discovery cut-off date was set for September 1, 1987 (for the entire case), and plaintiff disclosed his expert witnesses to all defense counsel; 2½ months prior to the hearing, the summary judgment motion was transferred to a court other than that in which the rest of the action was pending, whereupon a schedule for the motion was set by the court.

By the July 1 hearing, plaintiff still had not submitted any counteraffidavits. The record indicates that he intended to stand on his as-

sertions of an insufficient affidavit and inapplicability of the statute. After the court rejected these arguments, plaintiff asked for a continuance to obtain affidavits. The court declared the request to be untimely—there having already been four continuances of the hearing. The record clearly shows that plaintiff had notice that a counteraffidavit was needed. The summary judgment motion was continuing separately from the rest of the cause. Plaintiff did not need to complete discovery in order to obtain from one of his experts a writing that defendant was negligent. *Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 431 N.E.2d 48.

■ Moreover, the proper procedure to be used to obtain material facts in a summary judgment action is delineated in Supreme Court Rule 191(b). (107 Ill. 2d R. 191(b).) Rule 191(b) states that a party needing additional facts in a summary judgment proceeding must submit an affidavit naming persons from whom the additional facts can be obtained, showing why the affidavits cannot be obtained, and stating what it is believed the proposed affiant would testify to and the reasons therefor. A party who fails to follow these procedures until after summary judgment is granted cannot complain of an inability to conduct discovery before entry of the order. (*Rush v. Simon & Mazian, Inc.* (1987), 159 Ill. App. 3d 1081, 513 N.E.2d 100; *Rogers v. Robson, Masters, Ryan, Brumund & Belom* (1979), 74 Ill. App. 3d 467, 392 N.E.2d 1365, *aff'd* (1980), 81 Ill. 2d 201, 407 N.E.2d 47.) In the present case, plaintiff made no attempt to file a Rule 191(b) affidavit.

■ It is true that summary judgment is proper in a medical malpractice case only where the plaintiff has failed to demonstrate an ability to offer, through competent expert testimony, evidence at trial on the applicable standard of care. (See *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) Here, plaintiff made no such showing even though the record indicates he could have obtained an affidavit from an expert.

One of the major concerns of courts regarding a rush to summary judgment in a malpractice case is the difficulty plaintiffs may have in obtaining a medical expert to testify against one in the same profession. (See *Chiero v. Chicago Osteopathic Hospital* (1979), 74 Ill. App. 3d 166, 392 N.E.2d 203.) That was not the difficulty here since plaintiff had obtained his experts at least three months prior to the hearing. In other words, we believe plaintiff was given a fair opportunity to contradict Dr. Matviuw's affidavit, and that the trial court's entry of summary judgment for defendant was not an abuse of discretion. (See *Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 420 N.E.2d 810.) To hold otherwise under these facts would undermine the

policy of using the summary judgment procedure as a means of promoting judicial economy where appropriate.

█ Even assuming, *arguendo*, that summary judgment was premature, it was appropriate in this case because the Good Samaritan statute is applicable. That statute provides:

"Any person licensed pursuant to this Act or any person licensed to practice the treatment of human ailments in any other state or territory of the United States, except a person licensed to practice midwifery, who in good faith and without prior notice of the illness or injury provides emergency care without fee to a person, shall not, as a result of his acts or omissions, except wilful or wanton misconduct on the part of such person, in providing such care, be liable for civil damages." Ill. Rev. Stat. 1985, ch. 111, par. 4404 (now Ill. Rev. Stat. 1987, ch. 111, par. 4400—30).

The issue of whether section 2a applies to a physician responding to an emergency in a hospital is one of first impression in Illinois, although it has been considered in several other States. Illinois law also has protective provisions relieving others from liability for rendering free emergency aid to others, except for wilful and wanton conduct. See, *e.g.*, Ill. Rev. Stat. 1987, ch. 70, par. 61 (law enforcement personnel and fire fighters); Ill. Rev. Stat. 1987, ch. 111, par. 3505 (nurses); Ill. Rev. Stat. 1987, ch. 111½, par. 5517 (emergency medical care technicians).

█ Plaintiff asserts several reasons for the inapplicability of the statute in this situation: (1) as a member of Sherman's medical staff, Dr. Matviuw had a preexisting duty to render medical care to Connie Johnson and her unborn child; (2) a bill for Dr. Matviuw's services was sent by the hospital; and (3) section 2a only applies to emergencies arising outside of a hospital. We find merit in none of these contentions.

In support of the preexisting duty argument, plaintiff contends that Dr. Matviuw, as a member of the staff of Sherman, had a legal duty to aid decedent by virtue of the hospital's established rules and procedures. However, there is no evidence that merely because the physician had staff privileges at the hospital, he was thereby an employee of that hospital with a legal duty to aid in any emergency arising in the hospital. Furthermore, the hospital rules and regulations submitted by plaintiff only indicate that in an emergency a medical staff member "shall be permitted to do everything possible to save the life of a patient or to save a patient from serious harm." This is not mandatory language such as to create a legal duty. Plaintiff's reliance on *Lee v. State* (Alaska 1971), 490 P.2d 1206, is not analogous to the situation in the present case. In *Lee*, the plaintiff was injured by a po-

lice officer as he attempted to rescue her from a lion. The court decided that Alaska's Good Samaritan statute was inapplicable because the injury occurred as the officer was fulfilling his employment duties to protect the lives and welfare of citizens at large. As discussed above, Dr. Matviuw's actions were not predicated upon any legal duty.

Moreover, excerpts from depositions of two of the other defendant doctors do not clearly establish that a staff physician was "required" to respond to a code blue call. In any event, nothing in the record indicates that Dr. Matviuw came to Connie Johnson's aid in response to anything other than a nurse's shouts. Similarly, the fact that Sherman billed plaintiff for services rendered to his wife and unborn child has no bearing on Dr. Matviuw's alleged liability. The bill indicates no charge for the doctor's professional services, but rather appears to be charges for supplies and drugs used during the emergency.

█ Plaintiff contends that the language of section 2a is vague and ambiguous in that it does not explain or define "emergency care," and utilizes portions of the legislative debate prior to its passage in his argument. However, we disagree. The statute is not ambiguous. Although such debates are a valued source utilized by courts in determining legislative intent, such sources come into play only where the meaning of a statute cannot be determined from the statute itself. (*People v. Singleton* (1984), 103 Ill. 2d 339, 469 N.E.2d 200.) The best indication of legislative intention is determined from the explicit language of the statute. (*Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d 208, 443 N.E.2d 563.) An undefined term in a statute must be given its ordinary and popularly understood meaning. (*Canteen Corp. v. Department of Revenue* (1988), 123 Ill. 2d 95, 525 N.E.2d 73.) Thus, if statutory language is clear, the court must give it effect and should not read into the statute exceptions, limitations, and conditions. *People v. Goins* (1988), 119 Ill. 2d 259, 518 N.E.2d 1014.

█ Given these legal precepts, we have no need to examine any source other than the statute itself. No one in this case has suggested that the circumstances involving Dr. Matviuw with decedent constituted anything other than an emergency. It is beyond this court's power to limit the ordinary meaning of the word "emergency" by adding "except when occurring in a hospital." Here, the statute clearly applies to a physician who, in good faith and without prior notice of the illness, renders emergency care without charging a fee. That is precisely the situation in the present case.

We note that a few other States have addressed this same issue. A series of California Good Samaritan statutes are substantively similar to section 2a, except that hospital emergency rooms are covered in the

event of a medical disaster, as are doctors called in to aid another doctor in an emergency. (Cal. Bus. & Prof. Code §§2395, 2396 (Deering 1986).) That State's courts have held that situations involving doctors on a hospital medical staff who happen to be in the hospital and give emergency aid to a patient, not their own, in an emergency create no duty by the doctor to that patient. (*Burciaga v. St. John's Hospital* (1986), 187 Cal. App. 3d 710, 232 Cal. Rptr. 75; *McKenna v. Cedars of Lebanon Hospital* (1979), 93 Cal. App. 3d 282, 155 Cal. Rptr. 631.) However, California has disallowed statutory immunity where there is a preexisting duty to render emergency aid, as in the case of members of a hospital's emergency call panel. *Colby v. Schwartz* (1978), 78 Cal. App. 3d 885, 144 Cal. Rptr. 624.

A Georgia statute exempts doctors from liability who in good faith give emergency care "at the scene of an accident or emergency" with no charge. (Ga. Code Ann. §51—1—29 (1987).) A court interpreted this statute to be applicable to emergency care rendered in a hospital by a doctor, but held that summary judgment was inappropriate nonetheless because issues of fact existed as to whether the doctors involved in this case were protected under the statute because of requirements in the hospital's rules and regulations relating to their duties. *Clayton v. Kelly* (1987), 183 Ga. App. 45, 357 S.E.2d 865.

We also note that if a legislature so intends, it can specifically include emergencies occurring "within a hospital or other licensed medical care facility." (Mich. Comp. Laws §691.1502 (1979).) Given the clear language of the Illinois statute, this court must apply it as written. Any change in the scope of its protection is within the realm of our legislature, not the courts.

In summary, we affirm the trial court, finding that summary judgment for defendant Dr. Matviuw was proper, both procedurally and substantively. The Good Samaritan statute is applicable to emergencies occurring in a hospital if the other conditions stated in section 2a are met.

Affirmed.

LORENZ, P.J., concurs.

JUSTICE PINCHAM, specially concurring in part and dissenting in part:

I agree with the majority "that summary judgment *** was appropriate in this case because the Good Samaritan statute is applicable." (176 Ill. App. 3d at 916.) The Good Samaritan statute (Ill. Rev. Stat.

1987, ch. 111, par. 4400—30) provides:

> "Any person licensed pursuant to this Act or any person licensed to practice the treatment of human ailments in any other state or territory of the United States, except a person licensed to practice midwifery, who in good faith and without prior notice of the illness or injury provides emergency care without fee to a person, *shall not, as a result of his acts or omissions, except wilful or wanton misconduct on the part of such person, in providing such care, be liable for civil damages.*" (Emphasis added.)

The defendant, Dr. William D. Matviuw, and the emergency care he provided in the case at bar came within the expressed purview of the foregoing statute. There was no dispute that Dr. Matviuw provided the emergency care to the Johnsons in "good faith." Nor was there any debate that he did so "without prior notice of the illness or injury" of the Johnsons. For Dr. Matviuw to "be liable for civil damages" for the emergency care he provided the Johnsons, his acts or omissions of misconduct must have been *wilful* or *wanton*. Plaintiff made no such allegations against him. Plaintiff's complaint simply charged Dr. Matviuw with mere negligence. Plaintiff did not allege that any of the acts or omissions of misconduct by Dr. Matviuw in his emergency treatment and care of the Johnsons was wilful or wanton. For this reason, plaintiff's complaint did not allege a cause of action against Dr. Matviuw and the trial court properly entered summary judgment in his favor.

Because Dr. Matviuw and the emergency treatment he provided in the case at bar came within the purview of the Good Samaritan statute and plaintiff's complaint did not allege a cause of action against him, our affirmance of the entry of summary judgment in Dr. Matviuw's favor on that ground appropriately disposes of the instant appeal. It is, therefore, unnecessary to decide plaintiff's additional assertions that "(1) summary judgment was improper since Dr. Matviuw's affidavit was conclusory and self-serving," and "(2) summary judgment was premature since plaintiff's experts had not yet been deposed." Consequently, the majority needlessly decides that "plaintiff was given a fair opportunity to contradict Dr. Matviuw's affidavit, and that the trial court's entry of summary judgment for defendant [on that basis] was not an abuse of discretion" (176 Ill. App. 3d at 915) and to which I dissent.

I wholeheartedly agree with the majority's observation that "[o]ne of the major concerns of courts regarding a rush to summary judgment in a malpractice case is the difficulty plaintiffs [and defendants] may have in obtaining a medical expert to testify against one in the same

profession." (176 Ill. App. 3d at 915.) The rigors and perplexities of the plaintiff and defendant medical malpractice trial attorneys are diverse, extremely unique, demanding and vexatious. Although they may not be legally entitled to any special considerations, in my judgment the conduct of these attorneys, or any other attorney for that matter, should not be construed to deny their clients their rightful day in court on a hearing on the merits of the clients' claims by a fact finder, unless such attorney's conduct clearly and unequivocally demands such denial. Plaintiff's attorneys' conduct in the case at bar does not demand such denial.

In the case at bar, no discovery schedule was set, and the majority correctly observes that plaintiff's attorney *"did not violate any discovery orders."* (Emphasis added.) (176 Ill. App. 3d at 914.) As the majority additionally correctly observes, plaintiff's attorney "disclosed his expert witnesses to all defense counsel" (176 Ill. App. 3d at 914) and the scheduled date for their depositions and affidavits.

Dr. Matviuw's motion for summary judgment was predicated on Dr. Matviuw's contention that he was not liable under the Good Samaritan statute and on Dr. Matviuw's affidavit and deposition that his treatment of the Johnsons was medically proper. In response to Dr. Matviuw's motion for summary judgment, plaintiff's attorney moved to strike Dr. Matviuw's affidavit as insufficient. Plaintiff's attorney also contended that the Good Samaritan statute was inapplicable. The majority aptly points out that "[t]he record indicates that [plaintiff's attorney] intended to stand on his assertions of an insufficient affidavit and inapplicability of the [Good Samaritan] statute." (176 Ill. App. 3d at 914-15.) Had plaintiff's attorney prevailed on either contention, counteraffidavits by plaintiff would not have been necessary at that stage of the proceedings.

The trial court rejected plaintiff's contention that Dr. Matviuw's affidavit was insufficient and that the Good Samaritan statute was inapplicable. Thereupon, plaintiff's attorney requested a continuance to obtain affidavits from his previously disclosed expert witnesses. The trial court denied the request and entered summary judgment for Dr. Matviuw. In my judgment, the trial court abused its discretion in so doing. (*Hansbrough v. Kosyak* (1986), 141 Ill. App. 3d 538, 490 N.E.2d 181.) Plaintiff's attorney did in fact depose his two expert witnesses within six weeks after summary judgment was entered. It does not appear from the record before us that plaintiff's attorney's conduct in the case at bar demanded the drastic result of denying his client his rightful day in court on a full hearing on the merits of his claim by the appropriate fact finder. In my judgment, it was improper and an abuse

of discretion for the trial court on the facts in the instant case to defeat that right of plaintiff by the entry of summary judgment for defendant. I therefore dissent.