EVANSTON HOSPITAL *et al.*, Plaintiffs and Counterdefendants-Appellees, v. ARNOLD L. CRANE, Defendant and Counterplaintiff-Appellant.

First District (6th Division)   No. 1—89—3139

Opinion filed August 27, 1993.—Rehearing denied December 6, 1993.

Arnold L. Crane, of Wilmette, appellant *pro se.*

Alan J. Schumacher, of Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and James A. Knox, Jr., of counsel), for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Evanston Hospital, commenced this action to collect a medical bill from defendant, Arnold Crane. Crane filed a counterclaim alleging medical malpractice and consumer fraud on the part of Evanston Hospital. The trial court entered summary judgment in favor of the hospital as to the medical malpractice count and dismissed the consumer fraud count for failure to state a cause of action. Crane brings this *pro se* appeal from these rulings.

The relevant facts are as follows. On February 14, 1985, Evanston Hospital filed suit against Crane to collect a debt in the amount of $1,373.13 for hospital and medical services provided to Crane from September 10 to September 23, 1983. On March 14, 1985, Crane, appearing *pro se,* filed an answer and counterclaim alleging medical malpractice and consumer fraud.

On September 19, 1986, Crane filed a third amended counterclaim. In count I, Crane alleged that he had been admitted to the hospital's emergency room on September 10, 1983, with abdominal cramps, recurring diarrhea stemming from Crohn's disease, shortness of breath, chest pains, and a urinary tract infection. Crane had previously undergone a triple coronary bypass and suffered from insulin-dependent diabetes. Crane claimed that Evanston Hospital failed to:

> 1. carefully monitor his condition and the medical care he was receiving to determine whether his extended hospital stay was necessary;

2. immediately investigate, properly diagnose and inform him of his condition, and properly treat his condition by, among other things, referring him to a cardiologist for treatment of his heart condition and breathing problems;

3. give him medical advice and medical treatment to alleviate his abnormal breathing and shortness of breath even though he "vociferously complained" to nurses, doctors, and other hospital employees;

4. properly treat his Crohn's disease by proper administration of Questran and a "Precision Isotonic Diet";

5. notify the gastroenterologist that the "Precision Isotonic Diet" was causing him to have acute diarrhea;

6. follow "explicit orders" regarding the timing and frequency of his meals;

7. prescribe any medication for his diarrhea, cramping, and intestinal discomfort;

8. properly treat an oral fungus infection, by proper administration of Mycostatin;

9. inform him that his condition relating to Crohn's disease was deteriorating, that an operation might be necessary to alleviate such condition, and that vitamin supplements were necessary to maintain reasonable health; and

10. inform him of the effects of discontinuing insulin injections and of exercise on his body.

In addition, Crane alleged that Evanston Hospital wrongfully:

1. served him a meal of baked chicken with unremoved skin—a dish that was "extremely high in cholesterol";

2. failed to inform him of the foods to avoid to prevent Crohn's disease "flare-ups";

3. forced him to use the same container twice for his bowel movement samples and failed to remove the container promptly, such that he had to use another bathroom;

4. woke Crane up with radio music at 3 a.m.;

5. charged too much for various medications;

6. assigned nurses to Crane who complained about Evanston Hospital and its doctors; and

7. failed to offer him a facility for registering his complaints.

In count II of his counterclaim, Crane alleged that Evanston Hospital intentionally made false statements in various published newsletters regarding its commitment to quality medical care. Crane alleged that these statements were untrue and were made for the purpose of inducing him to be treated at Evanston Hospital, to his detriment.

On June 12, 1989, Evanston Hospital filed a motion for summary judgment as to count I of Crane's third amended counterclaim. The affidavit of Dr. Richard C. Stalzer was submitted in support of the motion. Dr. Stalzer graduated from Loyola University Medical School in 1960 and thereafter completed a Mayo Clinic fellowship. He had served as a senior attending physician at Evanston Hospital since 1966 and as chief of its general internal medicine department since 1987. Dr. Stalzer was board certified in internal medicine and was an assistant professor of clinical medicine at Northwestern Medical School.

Dr. Stalzer had reviewed Crane's complete medical chart and the allegations of Crane's counterclaim. Dr. Stalzer determined that at the time of Crane's admission to Evanston Hospital, he was suffering from acute exacerbation of Crohn's disease, anemia, acute renal insufficiency, and a urinary tract infection. He was aware that Crane had previously undergone a coronary artery bypass and a partial bowel resection several years before, and that he suffered from insulin-dependent diabetes since his bypass procedure. Dr. Stalzer also was aware that Crane had come to the hospital's emergency room with complaints of weakness, shortness of breath, malaise and chest pain, and that he had been admitted to the hospital under the care of Dr. Kim Meyers.

Dr. Stalzer stated his opinion that, to a reasonable degree of medical certainty, the care rendered to Crane at Evanston Hospital by the physicians, nurses, and other hospital staff was consistent with, and not a deviation from, the applicable standard of care. He concluded that all of Crane's medical conditions were appropriately recognized, evaluated and treated. In a letter attached to the affidavit, Dr. Stalzer stated:

"After careful perusal of the hospital record, I find absolutely no evidence of substandard care on the part of Dr. Meyers or other physicians involved in Mr. Crane's care. On the contrary, there is evidence of excellent medical care shown by carefully detailed progress notes, thoughtful outlines of the patient's many problems, and pertinent differential diagnoses.

This patient suffered with several medical problems and I believe that the diagnostic work up and therapy ordered for Mr. Crane were entirely appropriate and certainly well within the standard of medical care."

Crane did not file an expert counteraffidavit in response to Evanston Hospital's motion. Instead, he submitted his own affidavit, which restated the allegations of his counterclaim. He also filed a "motion to

dismiss" Evanston Hospital's motion for summary judgment. Crane asserted that he did not need expert testimony to overcome summary judgment because the hospital's negligent acts were within the common knowledge of laymen. Crane filed a motion to strike Dr. Stalzer's affidavit on the ground that Dr. Stalzer had failed to state facts supporting his conclusion that Evanston Hospital had not been negligent.

On August 18, 1989, the trial court granted Evanston Hospital's motion for summary judgment as--to count I of the third amended counterclaim because Crane had failed to submit any expert medical opinion in support of his claim. The court held that the hospital was entitled to judgment as a matter of law on the basis of Dr. Stalzer's affidavit.

On September 5, 1989, Crane moved to vacate the trial court's grant of summary judgment. Crane contended that Evanston Hospital had wrongfully failed to produce its bylaws and other documents in response to a production request Crane had filed on November 6, 1987, and that the bylaws and other requested documents would have established Evanston Hospital's standard of care. In an agreed order, Evanston Hospital had been granted until April 30, 1988, to respond to Crane's discovery requests. Evanston Hospital did not comply with that order. Crane did not file a motion to compel or otherwise bring Evanston Hospital's failure to respond to the attention of the trial court prior to the summary judgment hearing. Subsequently, on September 12, 1989, Crane filed a request to compel the production of documents by Evanston Hospital. In response, by a letter dated September 26, 1989, the hospital offered to produce the requested documents and asked Crane to advise as to copying arrangements. Crane failed to respond to the letter. On October 23, 1989, the trial court denied Crane's motion to vacate.

On July 14, 1989, Crane had filed a fourth amended counterclaim. Count I sounded in negligence and was identical to count I of the third amended counterclaim, as to which the court had entered summary judgment. In count II, Crane alleged that Evanston Hospital was liable to him under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*). Crane alleged that a footnote contained in "Prime Time," a medical newsletter issued by the hospital, was deceptive in that he did not in fact receive assistance from Evanston Hospital in the manner described in the footnote.

In addition, Crane alleged that Evanston Hospital's "Patient Guide" was deceptive in stating that the hospital was committed to high-quality patient care, when he did not receive such care. Further-

more, Crane alleged that Evanston Hospital's "Going Home" guide was deceptive in that he did not receive medical guidance upon discharge as the guide represented. Crane asserted that the statements in Evanston Hospital's literature were material, false, and intentionally made "to deceive [him] in rendering service to [him] and charging thousands of dollars for the service."

On August 21, 1989, Evanston Hospital filed a motion to dismiss count II pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). The hospital contended that the Consumer Fraud Act did not provide a remedy for damages arising from medical malpractice, and that Crane was seeking relief for a private wrong and for a mere false promise or statement of opinion not actionable under the Consumer Fraud Act.

The hearing on Evanston Hospital's motion to dismiss was set for October 23, 1989. On October 2, Crane sought a continuance on the ground that the hospital had not produced its bylaws and other requested documents. On October 10, the trial court denied Crane's motion for a continuance and stayed discovery because Evanston Hospital, under section 2—615, was challenging the legal sufficiency of Crane's claim, not the truth of his assertions.

At the October 23 hearing, the trial court granted Evanston Hospital's motion to dismiss Crane's Consumer Fraud Act claim. Crane's motion to vacate that order was denied on November 20, 1989, after which Crane filed a notice of appeal.

■■ Before reaching the merits of Crane's appeal, we must briefly mention Evanston Hospital's contention that Crane's appeal should be dismissed because his brief does not conform to the rules established by our supreme court for appellate briefs. (134 Ill. 2d R. 341.) While we agree with the hospital that there are many flagrant deficiencies in Crane's *pro se* brief, we elect to entertain his appeal.

Crane contends that the trial court erred in granting Evanston Hospital's motion for summary judgment on his medical malpractice claim. In Illinois, summary judgment is proper where the pleadings, depositions, admissions and affidavits on file establish that there is no genuine issue of material fact, and when no conflicting affidavits and depositions have been filed, the movant is entitled to judgment as a matter of law. (*Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294, 529 N.E.2d 552, 555; Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) In such actions, "failure to file counteraffidavits leaves an opponent of a summary judgment motion at risk since assertions in the movant's affidavit must be taken as true even though the opponent's pleadings contain contrary assertions." (*Johnson v. Matviuw* (1988), 176 Ill.

App. 3d 907, 913, 531 N.E.2d 970, 974.) In medical malpractice cases, the plaintiff must offer expert medical testimony to establish the standard of care, the breach thereof by a defendant physician or hospital, and an injury that was proximately caused by this breach of the applicable standard of care. *Matviuw*, 176 Ill. App. 3d 907, 531 N.E.2d 970; *Smith v. South Shore Hospital* (1989), 187 Ill. App. 3d 847, 854, 543 N.E.2d 868, 871.

■ Here, Evanston Hospital submitted the affidavit of Dr. Stalzer in support of its motion for summary judgment. In his affidavit, Dr. Stalzer stated that he reviewed Crane's medical chart as well as the allegations of Crane's medical malpractice claim. He detailed the multiple medical problems from which Crane was suffering when admitted to the hospital and was familiar with his history of heart trouble and diabetes. He subsequently concluded that, to a reasonable degree of medical certainty, the care rendered to Crane at Evanston Hospital by the physicians, nurses, and ancillary hospital staff personnel was consistent with, and not a deviation from, the applicable standard of care. Dr. Stalzer found that Crane's medical chart contained "detailed progress notes, thoughtful outlines of [Crane's] many problems, and pertinent differential diagnoses." He considered the diagnostic work-up and therapy ordered for Crane to be entirely appropriate and "well within the standard of medical care."

In response to Stalzer's affidavit, Crane did not file the required counteraffidavit from a qualified medical expert, but instead submitted his own affidavit merely restating the allegations raised in his counterclaim. This is insufficient to withstand a motion for summary judgment. *Brandeis v. Salafsky* (1990), 206 Ill. App. 3d 31, 36, 563 N.E.2d 1026, 1029.

Crane contends that he was not required to submit an affidavit from an expert because Evanston Hospital's negligence was so grossly apparent and the treatment of his condition so common as to be within the everyday knowledge of a layperson. (See *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) We disagree. How to treat a patient as ill as Crane would be well beyond the understanding of any layperson. Crane, for example, claims that he should have been referred to a cardiologist because of his heart condition, but whether a patient should be referred to a specialist is a question not for a layperson but for a medical expert. Likewise, how to diagnose his various symptoms, how to properly treat Crohn's disease, how to administer a "Precision Isotonic Diet," or how much Mycostatin to apply to an oral fungus infection are questions that only a qualified medical expert could answer.

■ Crane also maintains that Evanston Hospital "fraudulently concealed" from him its bylaws, rules, regulations, and publications discussing patient care in an effort to prevent him from establishing the applicable standard of care and Evanston Hospital's failure to meet it. Crane agreed to give Evanston Hospital until April 30, 1988, to respond to his discovery requests, but did not receive the requested documents by that date. However, he took no steps prior to the August 18, 1989, summary judgment hearing to bring to the trial court's attention the hospital's failure to respond. Too, prior to the hearing on Crane's motion to vacate the summary judgment, by a letter dated September 26, 1989, the hospital offered to produce the requested documents and asked Crane to advise as to copying arrangements. Crane never responded to the letter. Crane cannot now complain to this court about his failure to receive the requested documents when he failed to take appropriate steps in the trial court to secure them.

Moreover, the documents Crane had requested would not have established Evanston Hospital's deviation from the applicable standard of care. Hospital licensing regulations, accreditation standards, and hospital bylaws are admissible in a malpractice action as evidence of the standard of care by which the conduct of the hospital may be judged. Their admissibility, however, "does not relieve the plaintiff of the burden of establishing, by expert testimony, that the defendant's conduct breached the standard of care, as indicated by such regulations, standards, or bylaws" (*Roberts v. Sisters of Saint Francis Health Services, Inc.* (1990), 198 Ill. App. 3d 891, 897, 556 N.E.2d 662, 666), or that such conduct may have proximately caused the plaintiff's injuries. *Rohe v. Shivde* (1990), 203 Ill. App. 3d 181, 193, 560 N.E.2d 1113, 1125.

■ Crane also argues that Dr. Stalzer's affidavit was insufficient to establish adherence to the applicable standard of care. Illinois Supreme Court Rule 191 requires that affidavits in support of a motion for summary judgment be made on the personal knowledge of the affiant, setting forth specific evidentiary facts to which the affiant could competently testify. (134 Ill. 2d R. 191(a).) We find that Dr. Stalzer's affidavit meets these requirements. Dr. Stalzer set forth in detail his qualifications as an expert medical witness. As a board-certified specialist in internal medicine at Evanston Hospital since 1966, where he served as chairman of the division of general internal medicine, Dr. Stalzer was eminently qualified to render his opinion, made after reviewing Crane's counterclaim and medical chart, including progress notes, outlines, diagnoses, and treatments, that Evanston Hospital had not deviated from the applicable standard of care. We reject

Crane's contention that the affidavit should not have been considered because it was conclusory. Accordingly, summary judgment as to count I of Crane's counterclaim was proper.

Crane next contends that the trial court erred in dismissing count II of his fourth amended counterclaim, which was brought under the Consumer Fraud Act. (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*) In count II, Crane claimed that a footnote contained in "Prime Time," a medical newsletter issued by Evanston Hospital, was deceptive in that he did not in fact receive assistance from Evanston Hospital in the manner described. Specifically, the footnote stated:

> "At our hospitals, your health is our major concern. Every physician, every nurse, every member of our staff is totally dedicated to helping you gain and maintain glowing fitness and vitality. We are here to serve you in every way if you need us. But just as importantly, we are committed to helping you stay healthy and enjoy your own well-being to its fullest."

In addition, Crane claimed that Evanston Hospital's "Patient Guide" was deceptive in stating that the hospital was committed to high-quality patient care, because he did not receive such care. He also asserted that Evanston Hospital's "Going Home" guide was deceptive because he did not receive medical guidance when he was discharged as the guide stated he would. According to Crane, these statements amounted to "fraudulent misrepresentation[s] of material fact" which he relied on to his detriment, and for which the Consumer Fraud Act provided him a remedy.

In *Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580, 447 N.E.2d 1007, this court was faced with the question of whether the Consumer Fraud Act covers the conduct of attorneys engaged in the actual practice of law. In examining the language of the Consumer Fraud Act, we concluded that the legislature did not intend the Act to cover misconduct on the part of attorneys. We declined to impose on the defendant attorney statutory liability under the Consumer Fraud Act for what amounted to professional malpractice. In our view, the plaintiff clients in *Frahm* did not fall within the class of "consumers" which the Act was designed to protect, and the practice of law was not "conduct of any trade or commerce" within the meaning of the Consumer Fraud Act. *Frahm*, 113 Ill. App. 3d at 582-85, 447 N.E.2d at 1009-11.

The reasoning in *Frahm* relating to the practice of law can be applied equally as well in this case to the practice of medicine. We see no distinction between the practice of law and the practice of medicine for the purpose of determining the applicability of the Consumer

Fraud Act to a situation as in this case, where the only basis for liability against the hospital is the medical negligence of its doctors, nurses and/or ancillary staff personnel. The misconduct alleged here and in *Frahm* amounts to professional malpractice and cannot be equated with the misdeeds of an ordinary commercial enterprise, against which the Consumer Fraud Act was expressly enacted to protect "consumers" and "businessmen." (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*, Preamble.) Although the practice of medicine may have a business aspect, the commercial phases of medicine which directly affect the public are not at issue here. The Consumer Fraud Act "is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to redress a purely private wrong." *Frahm*, 113 Ill. App. 3d at 586, 447 N.E.2d at 1011.

Finally, Evanston Hospital's various representations in its publications as to the care it would extend to its patients were mere expressions of opinion or "puffing." (*Century Universal Enterprises, Inc. v. Triana Development Corp.* (1987), 158 Ill. App. 3d 182, 203, 510 N.E.2d 1260, 1273.) As such, they are not actionable under the Consumer Fraud Act.

Accordingly, we conclude that the trial court properly dismissed count II of Crane's counterclaim for failure to state a cause of action under the Consumer Fraud Act. In view of our holding, it is unnecessary to consider the hospital's argument that Crane's consumer fraud claim was barred by the statute of limitations.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RAKOWSKI and GIANNIS, JJ., concur.