**SPEAKERS OF SPORT, INC.,**
**Plaintiff–Appellant,**

v.

**PROSERV, INC., Defendant–Appellee.**

**No. 98–3113.**

United States Court of Appeals,
Seventh Circuit.

May 13, 1999.

Argued March 31, 1999.

Decided May 13, 1999.

Jeffrey I. Cummings (argued), Miner, Barnhill & Galland, Chicago, IL, Charles Barnhill, Jr., Miner, Barnhill & Galland, Madison, WI, for Plaintiff–Appellant.

Chris C. Gair (argued), Freeman, Freeman & Salzman, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and FLAUM and MANION, Circuit Judges.

POSNER, Chief Judge.

The plaintiff, Speakers of Sport, appeals from the grant of summary judgment to the defendant, ProServ, in a diversity suit in which one sports agency has charged another with tortious interference with a business relationship and related violations of Illinois law. The essential facts, construed as favorably to the plaintiff as the record will permit, are as follows. Ivan Rodriguez, a highly successful catcher with the Texas Rangers baseball team, in 1991 signed the first of several one-year contracts making Speakers his agent. ProServ wanted to expand its representation of baseball players and to this end invited Rodriguez to its office in Washington and there promised that it would get him between $2 and $4 million in endorsements if he signed with ProServ—which he did, terminating his contract (which was terminable at will) with Speakers. This was in 1995. ProServ failed to obtain significant endorsement for Rodriguez and after just one year he switched to another agent who the following year landed him a five-year $42 million contract with the Rangers. Speakers brought this suit a few months later, charging that the promise of endorsements that ProServ had made to Rodriguez was fraudulent and had induced him to terminate his contract with Speakers.

The parties agree that the substantive issues in this diversity suit are governed by Illinois law, and we do not look behind such agreements so long as they are reasonable, *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 849 (7th Cir. 1999), as this one is. The contract between Speakers and Rodriguez was made in Illinois, and Speakers is an Illinois corporation with its principal place of business there, which means that performance of the contract—the rendition of Speakers' services as Rodriguez's agent—would occur largely there. Although Rodriguez is not an Illinoisan and the allegedly wrongful act—the promise that lured Rodriguez from Speakers to ProServ—occurred elsewhere, the injury (the disruption of the contractual relationship between Speakers and Rodriguez) occurred in Illinois if it occurred anywhere, and under Illinois conflicts principles the law of the place of the injury presumptively governs in a tort suit. *Id.* at 844–45.

■ Speakers could not sue Rodriguez for breach of contract, because he had not broken their contract, which was, as we said, terminable at will. Nor, therefore, could it accuse ProServ of inducing a breach of contract, as in *J.D. Edwards & Co. v. Podany*, 168 F.3d 1020, 1022 (7th Cir.1999). But Speakers did have a contract with Rodriguez, and inducing the termination of a contract, even when the termination is not a breach because the contract is terminable at will, can still be actionable under the tort law of Illinois, either as an interference with prospective economic advantage, e.g., *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 230 Ill.Dec. 229, 693 N.E.2d 358, 370–71 (1998); *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870, 877–78 (1991); *Restatement (Second) of Torts* § 766B(b) (1979), or as an interference with the contract at will itself. *Europlast Ltd. v. Oak Switch Systems, Inc.*, 10 F.3d 1266, 1274 (7th Cir.1993) (applying Illinois law); *Restatement, supra*, § 766 comment g. Nothing turns on the difference in characterization.

■ There is in general nothing wrong with one sports agent trying to take a client from another if this can be done without precipitating a breach of contract. That is the process known as competition, which though painful, fierce, frequently ruthless, sometimes Darwinian in its pitilessness, is the cornerstone of our highly successful economic system. Competition is not a tort, *Keeble v. Hickeringill*, 11 East. 574, 103 Eng. Rep. 1127 (K.B. 1706 or 1707); *Frandsen v. Jensen–Sundquist Agency, Inc.*, 802 F.2d 941, 947 (7th Cir. 1986), but on the contrary provides a defense (the "competitor's privilege") to the tort of improper interference. See, e.g., *Soderlund Bros., Inc. v. Carrier Corp.*, 278 Ill.App.3d 606, 215 Ill.Dec. 251, 663 N.E.2d 1, 8 (1995); *Mannion v. Stallings & Co.*, 204 Ill.App.3d 179, 149 Ill.Dec. 438, 561 N.E.2d 1134, 1141 (1990); *Fred Siegel Co. v. Arter & Hadden*, 85 Ohio St.3d 171, 707 N.E.2d 853, 860–61 (1999); *Guard–Life*

*Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445, 448–49 (1980); *Restatement (Second) of Torts, supra*, § 768. It does not privilege inducing a breach of contract, *Soderlund Bros., Inc. v. Carrier Corp., supra*, 215 Ill.Dec. 251, 663 N.E.2d at 8— conduct usefully regarded as a separate tort from interfering with a business relationship without precipitating an actual breach of contract—but it does privilege inducing the lawful termination of a contract that is terminable at will. *Galinski v. Kessler*, 134 Ill.App.3d 602, 89 Ill.Dec. 433, 480 N.E.2d 1176, 1182–83 (1985); *Europlast Ltd. v. Oak Switch Systems, Inc., supra*, 10 F.3d at 1274 (applying Illinois law); *Prudential Ins. Co. v. Sipula*, 776 F.2d 157, 162–63 (7th Cir.1985) (ditto); *Restatement, supra*, § 768 comment i. Sellers (including agents, who are sellers of services) do not "own" their customers, at least not without a contract with them that is not terminable at will. *Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 538 N.Y.S.2d 771, 535 N.E.2d 1311, 1313–14 (1989).

There would be few more effective inhibitors of the competitive process than making it a tort for an agent to promise the client of another agent to do better by him, *Triangle Film Corp. v. Artcraft Pictures Corp.*, 250 F. 981 (2d Cir.1918) (L. Hand, J.)—which is pretty much what this case comes down to. It is true that Speakers argues only that the competitor may not make a promise that he knows he cannot fulfill, may not, that is, compete by fraud. Because the competitor's privilege does not include a right to get business from a competitor by means of fraud, it is hard to quarrel with this position in the abstract, but the practicalities are different. If the argument were accepted and the new agent made a promise that was not fulfilled, the old agent would have a shot at convincing a jury that the new agent had known from the start that he couldn't deliver on the promise. Once a case gets to the jury, all bets are off. The practical consequence of Speakers' ap-

proach, therefore, would be that a sports agent who lured away the client of another agent with a promise to do better by him would be running a grave legal risk.

■ This threat to the competitive process is blocked by the principle of Illinois law that promissory fraud is not actionable unless it is part of a scheme to defraud, that is, unless it is one element of a pattern of fraudulent acts. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 682 (1989); *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 13 Ill.Dec. 699, 371 N.E.2d 634, 641 (1977); *Doherty v. Kahn*, 289 Ill.App.3d 544, 224 Ill.Dec. 602, 682 N.E.2d 163, 176 (1997); *Desnick v. American Broadcasting Cos.*, 44 F.3d 1345, 1354 (7th Cir.1995). By requiring that the plaintiff show a pattern, by thus not letting him rest on proving a single promise, the law reduces the likelihood of a spurious suit; for a series of unfulfilled promises is better (though of course not conclusive) evidence of fraud than a single unfulfilled promise.

■ Criticized for vagueness, e.g., *id.* at 1354; *Stamatakis Industries, Inc. v. King*, 165 Ill.App.3d 879, 117 Ill.Dec. 419, 520 N.E.2d 770, 772–73 (1987) (and think only of the difficulty that courts have had in defining "pattern" under the RICO statute), and rejected in most states, e.g., *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 64 Cal.Rptr.2d 843, 938 P.2d 903, 917 (1997); *Palm Harbor Homes, Inc. v. Crawford*, 689 So.2d 3, 9 (Ala.1997); 2 Fowler V. Harper, Fleming James, Jr. & Oscar S. Gray, *The Law of Torts* § 7.10, p. 447–448 n. 19 (2d ed.1986), the Illinois rule yet makes sense in a case like this, if only as a filter against efforts to use the legal process to stifle competition. Consider in this connection the characterization by Speakers' own chairman of ProServ's promise to Rodriguez as "pure fantasy and gross exaggeration"—in other words, as puffing. Puffing in the usual sense signifies meaningless superlatives that no reasonable person would take seriously, and so it is not actionable as fraud. *Noll v. Peterson*, 338 Ill. 552, 170 N.E. 756, 761 (1930); *Evanston Hospital v. Crane*, 254 Ill.App.3d 435, 193 Ill.Dec. 870, 627 N.E.2d 29, 36 (1993); *All–Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 867–68 (7th Cir.1999). Rodriguez thus could not have sued ProServ (and has not attempted to) in respect of the promise of $2–$4 million in endorsements. If Rodriguez thus was not wronged, we do not understand on what theory Speakers can complain that ProServ competed with it unfairly.

The promise of endorsements was puffing not in the most common sense of a cascade of extravagant adjectives but in the equally valid sense of a sales pitch that is intended, and that a reasonable person in the position of the "promisee" would understand, to be aspirational rather than enforceable—an expression of hope rather than a commitment. It is not as if ProServ proposed to employ Rodriguez and pay him $2 million a year. That would be the kind of promise that could found an enforceable obligation. ProServ proposed merely to get him endorsements of at least that amount. They would of course be paid by the companies whose products Rodriguez endorsed, rather than by ProServ. ProServ could not force them to pay Rodriguez, and it is not contended that he understood ProServ to be warranting a minimum level of endorsements in the sense that if they were not forthcoming ProServ would be legally obligated to make up the difference to him.

It is possible to make a binding promise of something over which one has no control; such a promise is called a warranty. *All–Tech Telecom, Inc. v. Amway Corp.*, *supra*, 174 F.3d at 868–69; *L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561, 570 (7th Cir.1993); *Metropolitan Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir.1946) (L. Hand, J.); *Restatement (Second) of Contracts* § 2 and comment d (1981); Oliver Wendell Holmes, Jr., *The Common Law* 298–301

(1881). But it is not plausible that this is what ProServ was doing—that it was guaranteeing Rodriguez a minimum of $2 million a year in outside earnings if he signed with it. The only reasonable meaning to attach to ProServ's so-called promise is that ProServ would try to get as many endorsements as possible for Rodriguez and that it was optimistic that it could get him at least $2 million worth of them. So understood, the "promise" was not a promise at all. But even if it was a promise (or a warranty), it cannot be the basis for a finding of fraud because it was not part of a scheme to defraud evidenced by more than the allegedly fraudulent promise itself.

It can be argued, however, that competition can be tortious even if it does not involve an actionable fraud (which in Illinois would not include a fraudulent promise) or other independently tortious act, such as defamation, or trademark or patent infringement, or a theft of a trade secret; that competitors should not be allowed to use "unfair" tactics; and that a promise known by the promisor when made to be unfulfillable is such a tactic, especially when used on a relatively unsophisticated, albeit very well to do, baseball player. Considerable support for this view can be found in the case law. E.g., *Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 923 P.2d 416, 423–24 (1996); *NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492, 497 (1996); *Duggin v. Adams*, 234 Va. 221, 360 S.E.2d 832, 837 (1987); *Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365, 1371 (1978); *RTL Distributing, Inc. v. Double S Batteries, Inc.*, 545 N.W.2d 587, 591 (Iowa App.1996); *Restatement (Second) of Torts, supra,* § 767. But the Illinois courts have not as yet embraced the doctrine, and we are not alone in thinking it pernicious. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 902 P.2d 740, 760–63 (1995) (concurring opinion). The doctrine's conception of wrongful competition is vague—"wrongful by reason of ... an established standard of a trade or profession," *Yoakum v. Hartford Fire Ins. Co., supra,* 923 P.2d at 423, or "a violation of recognized ethical rules or established customs or practices in the business community," *RTL Distributing, Inc. v. Double S Batteries, Inc., supra,* 545 N.W.2d at 591, or "improper because they [the challenged competitive tactics] violate an established standard of a trade or profession, or involve unethical conduct, ... sharp dealing[, or] overreaching." *Duggin v. Adams, supra,* 360 S.E.2d at 837. Worse, the established standards of a trade or profession in regard to competition, and its ideas of unethical competitive conduct, are likely to reflect a desire to limit competition for reasons related to the self-interest of the trade or profession rather than to the welfare of its customers or clients. We agree with Professor Perlman that the tort of interference with business relationships should be confined to cases in which the defendant employed unlawful means to stiff a competitor, Harvey S. Perlman, "Interference With Contract and Other Economic Expectancies: A Clash of Tort and Contract Doctrine," 49 *U. Chi. L.Rev.* 61 (1982), and we are reassured by the conclusion of his careful analysis that the case law is generally consistent with this position as a matter of outcomes as distinct from articulation.

Invoking the concept of "wrongful by reason of ... an established standard of a trade or profession," Speakers points to a rule of major league baseball forbidding players' agents to compete by means of misrepresentations. The rule is designed to protect the players, rather than their agents, so that even if it established a norm enforceable by law Speakers would not be entitled to invoke it; it is not a rule designed for Speakers' protection. In any event its violation would not be the kind of "wrongful" conduct that should trigger the tort of intentional interference; it would not be a violation of law.

It remains to consider Speakers' claim that ProServ violated the Illinois

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* Speakers is not a consumer, and while a competitor is permitted to bring suit under the Act as a representative of the consumer interest (an example would be a case in which a multitude of consumers had been deceived by a competitor and their individual losses were too small to warrant the costs of suit), he must "prove, by clear and convincing evidence, how the complained-of conduct implicates consumer protection concerns." *Brody v. Finch University of Health Sciences,* 298 Ill.App.3d 146, 232 Ill.Dec. 419, 698 N.E.2d 257, 268–70 (1998); *Peter J. Hartmann Co. v. Capital Bank & Trust Co.,* 296 Ill.App.3d 593, 230 Ill.Dec. 830, 694 N.E.2d 1108, 1117 (1998). No effort at proving this was made here. The only consumer in the picture is Rodriguez, and the allegation that he was injured is made by Speakers rather than by him. He doesn't claim to have been defrauded, or otherwise wronged, by ProServ. On the contrary, he testified in his deposition that his agent at ProServ was "a very good person," "a very honest person," and "a good person for me." If the type of misconduct in which a defendant is alleged to have engaged has the potential to harm a number of consumers, even if no one has yet been harmed, this might allow a seller who feared losing those consumers because of the defendant's violation of the Act to obtain injunctive relief, but Speakers is not seeking such relief.

The seller can be hurt even if the customer is not; but to allow the seller to obtain damages from a competitor when no consumer has been hurt is unlikely to advance the consumer interest. Allowing Speakers to prevail would hurt consumers by reducing the vigor of competition between sports agents. The Rodriguezes of this world would be disserved, as Rodriguez himself, a most reluctant witness, appears to believe. Anyway, we don't think that the kind of puffing in which ProServ engaged amounts to an unfair method of competition or an unfair act or practice. The Illinois legislature borrowed these terms from section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and has instructed the courts (815 ILCS 505/2) to conform the meaning of the terms to the meaning they bear in section 5, a provision designed to advance antitrust policy, e.g., *FTC v. Motion Picture Advertising Co.,* 344 U.S. 392, 394–95, 73 S.Ct. 361, 97 L.Ed. 426 (1953), and protect consumers from deceptive practices, e.g., *FTC v. A.P.W. Paper Co.,* 328 U.S. 193, 199 n. 4, 66 S.Ct. 932, 90 L.Ed. 1165 (1946), but not to protect competitors from competition.

We add that even if Speakers could establish liability under either the common law of torts or the deceptive practices act, its suit would fail because it cannot possibly establish, as it seeks to do, a damages entitlement (the only relief it seeks) to the agent's fee on Rodriguez's $42 million contract. That contract was negotiated years after he left Speakers, and by another agent. Since Rodriguez had only a year-to-year contract with Speakers—terminable at will, moreover—and since obviously he was dissatisfied with Speakers at least to the extent of switching to ProServ and then when he became disillusioned with ProServ of *not* returning to Speakers' fold, the likelihood that Speakers would have retained him had ProServ not lured him away is too slight to ground an award of such damages. See *Haudrich v. Howmedica, Inc.,* 169 Ill.2d 525, 215 Ill.Dec. 108, 662 N.E.2d 1248, 1256 (1996); *Girsberger v. Kresz,* 261 Ill.App.3d 398, 198 Ill.Dec. 940, 633 N.E.2d 781, 791 (1993); *Nicolet Instrument Corp. v. Lindquist & Vennum,* 34 F.3d 453, 457 (7th Cir.1994); *Klein v. Grynberg,* 44 F.3d 1497, 1505–06 (10th Cir.1995); cf. *Powell v. Garmany,* 208 Ga. 550, 67 S.E.2d 781, 783 (1951). Such an award would be the best example yet of puffing in the pie-in the-sky sense.

AFFIRMED.